**MCLAUGHLIN & LAURICELLA, P.C.**
By: Gregory B. Heller
Attorney I.D. No. 61130
One Commerce Square
2005 Market Street, Suite 2300
Philadelphia, PA 19103
gheller@best-lawyers.com
(267) 238-1211

**MANTESE HONIGMAN, P.C.**
By: Gerard Mantese (*pro hac vice forthcoming*)
Michigan Attorney I.D. No. P34424
1361 E. Big Beaver Rd.
Troy, MI 48083
gmantese@manteselaw.com
(248) 457-9200

**J. J. CONWAY LAW**
By: John J. Conway (*pro hac vice forthcoming*)
Michigan Attorney I.D. No. P56659
26622 Woodward Ave., Suite 225
Royal Oak, MI 48067
jj@jjconwaylaw.com
(313) 961-6525



Filed and Attested by the
Office of Judicial Records
18 JUN 2021 01:43 pm
S. RICE

Attorneys for...

## IN THE COURT OF COMMON PLEAS OF
## PHILADELPHIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| KEVIN STEINKE<br>on behalf of himself and<br>all others similarly situated,<br>c/o Gregory B. Heller, Esq.<br>One Commerce Square<br>2005 Market Street, Suite 2300<br>Philadelphia, PA 19103<br><br><br>          Plaintiff<br><br>          vs.<br><br>AON INVESTMENTS USA, INC.,<br>600 N. 2nd Street, Ste. 401, Harrisburg,<br>Pennsylvania 17101 | CIVIL ACTION<br><br>JUNE TERM, 2021<br><br>No.<br><br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION<br><br>COMMERCE PROGRAM |

Case ID: 210601197

Ex. A - 0001

812 MARKET STREET, LLC,
600 N. 2nd Street, Ste. 401, Harrisburg,
Pennsylvania 17101


AND HAMILTON LANE ADVISORS, L.L.C.,
1 Presidential Blvd 4th Floor, Bala Cynwyd,
Pennsylvania 19004

JOINTLY AND SEVERALLY,

    Defendants.

## CLASS ACTION COMPLAINT

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| Philadelphia Bar Association<br>Lawyer Referral and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania  19107<br>(215) 238-6333<br>TTY (215) 451-6197 | Asociacion De Licenciados De Filadelfia<br>Servicio De Referencia E Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania  19107<br>(215) 238-6333<br>TTY (215) 451-6197 |

Case ID: 210601197

Ex. A - 0002

## CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, states as follows:

1.      This case arises from widespread wrongdoing on the part of Defendants with respect to the Public School Employees Retirement System (PSERS), which is a defined benefit pension plan for public school teachers within the Commonwealth of Pennsylvania. Defendants violated their fiduciary responsibilities and professional services duties and agreements with respect to PSERS, as described below. The actions of Defendants have triggered a direct increased contribution obligation from Plaintiff and the putative Class to shore-up the Plan's recently disclosed pension funding shortfall. To redress these actions, Plaintiff brings this action, individually and on behalf of others similarly situated, to make the Plan participants whole, as well as for injunctive relief, damages, and other relief.

## THE PARTIES

2.      Plaintiff Kevin Steinke is a current public school teacher and resident within the Commonwealth of Pennsylvania. Plaintiff teaches middle-school students and is a current contributing participant in the PSERS Defined Benefit Plan. PSERS and its agents issued notice to Plaintiff that the Plan's increased defined contribution provisions have been triggered and mandatory payments will commence through payroll deductions taken from his paychecks.

3.      Plaintiff seeks to represent himself and a proposed class of current public-school employees who are participants in the "PSERS Defined Benefit Plan" who have this year experienced an increased direct defined contribution liability as a result of the Plan's mismanagement. Plaintiff brings this action on behalf of himself and on behalf all other similarly situated pension plan participants.

4.      Defendant Aon Investments USA, Inc. ("Aon") is a Pennsylvania corporation with

Ex. A - 0003

a registered office and an address for service of process at 600 N. 2nd Street, Ste. 401, Harrisburg, Pennsylvania 17101. Aon served as "General Investment Consultant" assisting PSERS and its staff by, among other things, "formalizing investment objectives, establishing an asset allocation plan, conducting investment advisor searches, reviewing performance, and commenting on compliance with investment policies."[1] Defendant Aon conducts and transacts business throughout the Commonwealth of Pennsylvania.

5.      Defendant 812 Market Street, LLC (hereinafter "812 Market") is a Pennsylvania Limited Liability Company with an address for service of process at 600 N. 2nd Street, Ste. 401, Harrisburg, Pennsylvania 17101.[2] Defendant 812 Market conducts and transacts business throughout the Commonwealth of Pennsylvania.

6.      Defendant Hamilton Lane Advisors, LLC (hereinafter "Hamilton Lane") is a Pennsylvania Limited Liability Company with a place of business and an address for service of process at One Presidential Blvd., 4th Floor, Bala Cynwyd, Pennsylvania 19004. Hamilton Lane serves as PSERS External Alternative, Private Credit, Private Infrastructure, and Private Real Estate Investment Consultant.[3] Defendant Hamilton Lane conducts and transacts business throughout the State of Pennsylvania.

**JURISDICTION AND VENUE**

7.      Plaintiff is a citizen of the Commonwealth of Pennsylvania and resides within Philadelphia County.

8.      Upon information and belief, Defendants Aon, Hamilton Lane and 812 Market

---

[1]  *PSERS 2020 Comprehensive Annual Financial Report,* https://www.psers.pa.gov/FPP/Publications/General/Documents/2020%20Investment%20Section-CAFR-DRAFT-Updated%2012-9-20_website.pdf at p. 87. (Last visited June 4, 2021).
[2] *Id.*
[3] *Id.*

Case ID: 210601197

Ex. A - 0004

Street regularly conduct business in Philadelphia, Pennsylvania.

9.     All Defendants regularly conduct and transact business or reside within the Commonwealth of Pennsylvania.

10.     Venue is proper in Philadelphia County because some of the property that is the subject matter of this action, including paychecks and mandatory deductions for Plaintiff and members of the class who live or have bank accounts in Philadelphia, is located in Philadelphia County and Plaintiff seeks, inter alia, equitable relief with respect to such property, and because, on information and belief, defendants regularly conduct business in Philadelphia County.

11.     In this dispute more than two-thirds (2/3) of the members of the proposed Plaintiff Class are citizens of the Commonwealth of Pennsylvania as they currently work as public school teachers within the State's school system.

12.     Defendants are citizens of or conduct business in the Commonwealth of Pennsylvania and from whom significant relief is sought by members of the Plaintiff Class and whose alleged conduct forms a significant basis for the claims asserted by the proposed Plaintiff Class.

13.     The principal injuries resulting from the wrongful conduct and the related conduct of each named Defendant were incurred within the Commonwealth of Pennsylvania.

14.     During the three years preceding the filing of the class action, Plaintiff is unaware of any other class action having been filed asserting the same or similar factual allegations against any of the Defendants on behalf of the same or other persons.

15.      The amount in controversy exceeds $50,000 exclusive of interest, costs, and attorneys' fees, and Plaintiff seeks equitable relief.

**GENERAL ALLEGATIONS**

Case ID: 210601197

Ex. A - 0005

16.    Within the public sector, employee retirement benefits have been traditionally provided to governmental employees, like public school teachers, by way of defined benefit pensions and defined contribution retirement plans (similar to the IRC 401-K plans commonly used in the private sector) as a recognized form of deferred compensation and to provide for a dignified and secure retirement.

17.    As retirement costs increased, state governments, like the Commonwealth of Pennsylvania, began reforming their pension laws in order to find new ways to fund retirement benefits for long-tenured employees and make changes to established benefit programs.

18.    One such change was to increase the sacrifice of the state's public school employees by combining the aspects of defined benefit and defined contribution plans as a method of more easily financing an employee's retirement.

19.    For the state's public school teachers, this marked a significant change with regard to their financial responsibilities. The affected public school employees were now, through their labor and service, potentially responsible for funding portions of their retirements, but the rate of contribution was subject to change based upon the performance of PSERS investments.

20.    The basic understanding of these pension reforms is that while teachers were busily educating the state's public-school students, the retirement system would faithfully manage their trust funds to ensure adequate funding for a secure retirement.

21.    PSERS employs investment and executive staff who are charged by statute and common law to faithfully manage the Plan's assets solely for the Plan members' exclusive benefit and providing for their retirements.

22.    Under Pennsylvania law, the value of PSERS' assets must be regularly audited and assessed to assure that contribution levels are adequate to fulfilling the mandate of the plan.

Case ID: 210601197

Ex. A - 0006

23.    The contribution levels of the state's public school teachers are tied to the investment return or performance levels of the PSERS asset portfolio.

24.    If the performance is stable or exceeds expectancy, the required contributions stay level or unchanged.

25.    If, however, the Plan's asset values fall below a certain measure, the state's current teachers are required to replenish the losses through mandatory contributions.

26.    Under this hybrid model of pension plan funding, if the Plan's performance falls below a certain threshold, Plan member contributions are automatically increased for a 3-year period.

27.    Beginning in approximately October 2020, the ongoing dealing between the defendants and Mr. Glenn Grell and Mr. James Grossman, PSERS' Executive Director and Chief Investment Officer, respectively, revealed that the Plan's investments had failed to perform as promised and exposed relationships among Messrs. Grell and Grossman, and the Plan's consultants and advisors that involved luxury trips to exotic locales and the payment from the Plan of millions of dollars in consulting fees that dragged down the performance of the Plan's investments.

***The Operational Structure and Management of the Public School Teachers Retirement Plans***

28.    Pennsylvania's public school teachers are, generally, enrolled as participants in the PSERS which holds their defined benefit plan funds, currently amounting to approximately $64 billion dollars in trust.

29.    The PSERS plan is overseen by the Public School Employee Retirement Board, or "PSERB," an independent administrative board of the Commonwealth, 24 Pa. C.S. § 8501(a), and its fifteen members who stand in a fiduciary relationship to the members of PSERS regarding the

Case ID: 210601197

Ex. A - 0007

investments and disbursements of the Fund. 24 Pa. C.S. § 8521(e).

30.    PSERB, as the named trustees of the Plan, have exclusive control and management of the Fund and full power to invest the Plan, subject to observance of the statutorily imposed duty to invest and manage the Fund for the "exclusive benefit" of the Plan's members and beneficiaries. 24 Pa. C. S. § 8521(e).

31.    These fiduciary obligations extend to employees and agents of PSERB, including Aon, Hamilton Lane, 812 Market Street, and Messrs. Grell and Grossman. 24 Pa.C.S. § 8521(e).

32.    PSERB, via its Investment Office, provides oversight of PSERS' investment activities. PSERB employs Investment Office Professionals, as well as external investment managers and consultants, to assist PSERB in achieving investment objectives.

33.    Defendants, retained pursuant to written contracts, are "Independent Contractors" as defined by 42 Pa. C.S. § 8501 of the Sovereign Immunity Act. As such, claims made against Defendants are not subject to sovereign immunity.

34.    Unbeknownst to the state's more than 200,000 currently working PSERS participants, the Plan's consultants and advisors (i) collected professional service and management fees in the millions of dollars, and (ii) made a compounding series of errors that has devasted the fund and resulted in at least a multi-billion dollar funding shortfall.

## OVERVIEW OF THE PLAN'S MISMANAGEMENT

35.    On March 12, 2021, PSERB publicly admitted that the trustees and their advisors made a costly mistake by endorsing an inflated figure for its anticipated return on the PSERS defined benefit investment portfolio supplied by one of its advisors, Defendant Aon, who, among other duties, prepared investment return analysis for use in making additional investments, selling investments, and asset allocation, among other things.

6

Case ID: 210601197

Ex. A - 0008

36.     A closer investigation of the PSERB accounting error uncovered other, more significant structural problems with the operations and investment decisions of the PSERS Defined Benefit Plan itself.

37.     Investigations revealed that the Board's internal and external advisors' investment decisions, analyses, and asset portfolio balancing appeared to be extremely problematic and in direct contravention with the best interests of the Plan's participants, the State's "exclusive benefit" rule regarding public pension management responsibilities, and the prudence requirements of the pension code. 24 Pa.C.S. § 8521(e).

38.     The PSERS Defined Benefit Plan engages an extensive network of professional services of several types of plan advisors from the financial and accounting world, including accountants, actuaries, investment managers, investment advisors, and third-party administrators and advisors.

39.     For fees charged to the plan, these professional and business organizations provide investment and accounting advice that directly impacts the lives of Pennsylvania's public-school teachers and taxpayer funding.

40.     The named Defendants made financial and accounting recommendations that were negligent or grossly negligent and led to significant and traceable losses to assets of the Plan amounting to millions (and potentially billions) of dollars.

41.     For example, the initial error in analyzing the Plan's investments occurred when Defendant Aon established an expected rate of investment return for the Plan that was used for portfolio analysis but also reviewed by other outside advisors who were responsible for setting the potential contribution rates for the schoolteacher's employing districts.

42.     This error – which Aon states was clerical in nature and went undetected for nearly

Case ID: 210601197

Ex. A - 0009

a decade – led to a further assessment of the Plan's investments.

43.    It was then revealed that in addition to the rate of return being incorrectly calculated, there was a significant underperformance of the Fund's investments.

44.    Since the investments were not made in publicly reported funds, the Plan's participants were reliant upon the accurate and full disclosure of PSERB and its advisors to reveal how well or poorly they were performing.

45.    Defendant Aon's errors led to an automatic increase in contributions rates for currently employed schoolteachers who are contributing members of the PSERS Defined Benefit Plan.

46.    By operation of the Commonwealth's pension reform law, the Plan's underperformance triggered automatically determined increased contribution obligations on the part of the putative Class.

47.    With the revelation of Aon's calculation error came more disclosures. Several PSERS Board members have stated that the Plan is now underfunded by $17 billion or more.

48.    The Board members have admitted that Plaintiff and Plaintiff Class will be compelled to contribute at least $26 million, annually, to the Fund to cover current obligations over at least the next three years.

49.    All currently working and enrolled teachers in employee classes T-E, T-F, T-G, and T-H will face some form of contribution liability.

50.    The Plaintiff and the proposed Plaintiff Class' required contributions will be assessed as follows and remitted to the Fund to shore-up the PSERS losses:

Case ID: 210601197

Ex. A - 0010

| Class | Base DB Contribution Rate | Shared Risk Increase | Total DB Contribution Rate Starting July 1, 2021 |
|---|---|---|---|
| **Class T-E** | 7.50% | +0.50% | 8.00% |
| **Class T-F** | 10.30% | +0.50% | 10.80% |
| **Class T-G\*** | 5.50% | +0.75% | 6.25% |
| **Class T-H\*\*** | 4.50% | +0.75% | 5.25% |

51.     The teachers who were hired most recently, in 2019, will face the highest increase at 75%. These teachers make the least but will front the highest percentage of the increased contributions.

***The Unreasonably Risky and Unjustified Alternative Investment Portfolio***

52.     The automatic contributions from Plaintiff and the Plaintiff Class stem also from the actions of Aon and the Plan's investment advisors who are duty-bound to ensure that PSERS funds are properly managed and that investment selections ensure funding levels are properly maintained and comply with all fiduciary obligations owed to the Plan's participants.

53.     Specifically, Defendants made recommendations on asset allocation, portfolio balancing, and investment income generation, among other things as well as marketing and recommending certain investment offerings.

54.     Defendants had the responsibility for researching, conducting due diligence, understanding suitability, and ensuring compliance with the State's exclusive benefit rule, among other contractual, statutory, and common law duties before making recommendations.

55.     Despite these responsibilities, Defendants recommended a portfolio of investments that deeply invested in alternative investment vehicles that resulted in significant plan losses to the PSERS defined benefit retirement plan.

Case ID: 210601197

Ex. A - 0011

56.     The extent of these investments, which some accounts place at a level of greater than 50% of the investment portfolio, have caused significant Plan losses.

57.     Owing to cryptic public reporting and a cited need for secrecy, many of the features of the Plan's alternative investment portfolio remain unknown.

58.     In many cases, the risk level for these investments was inconsistent with the Plan's objectives and put millions of dollars of PSERS' trust funds at risk while simultaneously risking the likelihood that adversely affected public school employees would be forced to contribute to making up the losses to cover the plan's current and future retirement obligations.

59.     As the scope of the problems became publicly known, in March 2021, the Plan's Trustees reported that they were retaining outside counsel to assist with a corruption investigation by the U.S. Federal Bureau of Investigation into the Plan's investments.

60.     Soon thereafter, PSERS confirmed that a federal grand jury had been convened and was investigating the Plan's investments and the Plan's mismanagement by its hired fiduciaries and investment advisors.

***Other Improper Actions of Defendants***

61.     For several years, it appears that the Defendants had no concern over monitoring its vast and expanding alternative investment portfolio as they plunged billions of dollars of Plan assets into unusually risky ventures.

62.     Defendants invested billions of dollars of Plan assets with individuals and entities that any prudent investor would have avoided and did so with a disregard for the harm that would occur to the Plan and the putative Class.

63.     Defendants ignored several "red flags" surrounding the investments, which demonstrated their disregard of the substantial risk of these investments and the likelihood that

Case ID: 210601197

Ex. A - 0012

losses would require the teachers to contribute more to cover the losses.

64.     Placing such a considerable level of assets into alternative investment vehicles, where the justification for the investments could not be made, spurred an FBI investigation.

65.     At the same time, Defendants developed a relationship with investment managers that resulted in exorbitant fees and carried interest payments to the investment managers and lavish trips for Defendants and their staffs.

66.     Since 2010, the Messrs. Grossman and Grell have authorized the payment of millions in investment fees to investment firms.

67.     In 2019 alone, the Fund paid private investment firms $293 million in management fees and expenses, and an additional $448 million in performance, or carried interest, fees.

68.     In view of the investment returns, losses, and when compared to other less expensive vehicles, the fees were excessive and unjustified.

***PSERS Employees Took Lavish Trips While Teachers Were in the Classroom***

69.     Along with the excessive payments of investment and management fees, PSERS officials began to spend lavishly on "educational" trips so they could obtain "investment advice."

70.     The investment advice was offered in beautiful and expensive destinations.

71.     In 2019, as the state's teachers were busy educating their students, 38 PSERS officials made trips to such beautiful and lavish cities as Sydney, Paris, Miami Beach, and Beverly Hills charging nearly half a million dollars just in airfare and lodging back to the Funds.

72.     While traveling to exotic locations and staying in posh hotels, Messrs. Grell and Grossman deemed it appropriate to leave the planning of the trips to the outside investment managers.

73.     Consultants made arrangements for Messrs. Grell and Grossman's staff to attend meetings in yet other locations, including Zurich, Hong Kong, and Bermuda.

11

Case ID: 210601197

Ex. A - 0013

74.    While these firms planned the investment staff's and executive staff's travel, they then invoiced the Fund for the travel, to the tune of $1.5 million from 2017-2019.

75.    PSERS travel expenses have never been consistent with the Governor's state travel policy that sets the limit for travel expenses at the federally approved maximums for federal employees.

76.    PSERS admits that it failed to keep any records, or even inquire, as to what the travel expenses arranged and charged by the outside firms were.

77.    At a PSERB meeting, Board member Nathan Mains said that the Board "[doesn't] really have a sense of what some of our funds or managers or others have actually spent" on travel.

78.    Mr. Grossman–who is paid $485,000 annually–indicated that the executive office and investment staff have not bothered to keep track of travel expenditures for the past several years.

79.    PSERS is one of the largest public retirement funds in the country, and yet it was ranked 49th out of 50 for investment performance by the Public Pension Management and Asset Investment Review Commission in 2018.

80.    The Fund's portfolio ranks first in the nation in terms of the level of assets invested in "alternative" funds as compared to other public pensions, and also for the smallest share invested in traditional investments, like stocks and bonds.

81.    The PSERS Fund pays among the nation's highest fees to its money managers and outside consultants–more than $700 million in 2019.

82.    In the fiscal year 2016-2017, the amount of management fees, revenue share, and expenses was greater than the combined employee contributions to the system during the same period.

Case ID: 210601197

Ex. A - 0014

83.    Mr. Grell and his executive staff have failed and refused to disclose management fee agreements, further obscuring the propriety of the fees.

84.    In addition to fees, Messrs. Grell and Grossman have approved and recommended to the Board carried interest agreements with these outside managers, resulting in billions of dollars going to these private investment managers instead of addressing the Fund's at least $17 billion deficit to its benefit obligations.

85.    Mr. Grell argued that only "net of fee" returns are important in evaluating the health of an investment decision, and has consistently argued against making such information publicly available, contrary to the Governmental Accounting Standards Board statements 25 and 67, which have stressed the value of reporting both net and gross of fees performance.

86.    PSERS fails to maintain a comprehensive report of fee terms negotiated with Defendants. It has stated, as recently as 2018, that "PSERS does not maintain complete cost terms for each individual investment manager."

87.    PSERS does not maintain or publish information regarding carried interest or performance fees for alternative investments, real estate investments, or commodities, which make up nearly 80% of its investments.

***Prison Payphones and Funding a War: The Weird World of PSERS Investments***

88.    While the State's public school teachers were busy preparing Pennsylvania students for the future, Messrs. Grell and Grossman and other consultants spent recklessly with their savings.

89.    "PSERS' investment underperformance over the past 10 years is beyond dispute, resulting in higher payroll deductions for nearly 100,000 public school employees," Stacy Garrity stated in a letter to PSERB dated June 1, 2021. In a 2018 report, the bi-partisan Pennsylvania

Case ID: 210601197

Ex. A - 0015

Public Pension Management and Asset Investment Review Commission found that the Fund underperforms because PSERS has pursued an investment strategy that made disproportionate allocation bets on illiquid alternative investments, and more recently leverage, through a strategy purported to be more risk balanced than traditional stock and bond investments.

90.    Specifically, the 2018 study found that "PSERS' asset allocation strategies significantly deviated from the peer group over the ten-year time period (2007-2017), specifically with regards to its low public equity allocation in favor of [alternative investments like] fixed income, hedge funds, private equity, commodities, and its use of leverage in the portfolio."

91.    This trend toward alternative investments has maintained as the following chart shows, PSERS 2020 allocation of 62.6% to alternatives–investments other than publicly traded stocks and bonds–is more than double the size of other plans: Public (27.9%), Union (25.6%) and Corporate (16.8%).



92.    Rather than selecting mainstream and time-tested investments in asset classes and indexes that yield stable, predicted returns with acceptable risk levels, Defendants made risky bets on alternative investments.

93.    Messrs. Grell and Grossman, and various consultants, skipped over safe

Case ID: 210601197

Ex. A - 0016

investments like stable bond funds and indexed investments with low management fees like the Standard and Poor's 500 and instead invested in trailer park chains, pistachio farms, payphone systems for prison inmates—and, in a particularly bizarre twist, loans to Kurds trying to carve out their own homeland in northern Iraq, which has been perpetually unsuccessful.

94.    Worse, by moving deeply into the alternative investment class, Messrs. Grell, Grossman, and various consultants recommended actively managed investments that cost higher fees and gobbled up whatever returns were actually realized in the investments themselves.

***"OilFlow:" An Irish Corporation, Trading in the Caymans, Oil Futures for the Kurds***

95.    Upon information and belief, in 2016, PSERS invested in a Fixed Income Private Governmental High Yield 144A Bond called OilFlow SPV 1 DAC ("OilFlow"), owned by Glencore, upon recommendation from its emerging debts portfolio manager and other advisors.

96.    SEC Rule 144A Bonds are highly controversial, owing to the lack of information required to be provided on the market and unsuitable for a public school teachers' pension fund.

97.    Investopedia reports that these bonds provide "a mechanism for the sale of securities that are privately placed to Qualified Institutional Buyers that do not—and are not required—to have an SEC registration in place. Instead, securities issuers are only required to provide whatever information is deemed necessary for the purchaser before investing." [4]

98.    With this financial vehicle, Glencore made loans to Kurdistan in Iraq, backed by oil in the region.[5]

99.    In September 2018, an announcement filed with the Cayman Islands Stock

---

[4] https://www.investopedia.com/terms/r/rule144a.asp
[5] Mary Williams Walsh, *FBI Asking Questions After a Pension Fund Aimed High and Fell Short*, The New York Times, (May 11, 2021), https://www.nytimes.com/2021/05/11/business/dealbook/psers-pennsylvania-fund-fbi.html (last visited June 4, 2021).

Case ID: 210601197

Ex. A - 0017

Exchange claimed that the oil exports of the Kurdistan Regional Government had fallen by 50% after the Iraqi Army took over the Kirkuk oil fields.[6]

100.    OilFlow is an Irish-based company headquartered in a four-story building where about 200 other companies were also formally incorporated.

101.    Upon information and belief, consultants and marketers advised Messrs. Grell and Grossman as to the potential profitability of its OilFlow asset, boasting of guaranteed returns of 12%.

102.    According to a PSERS representative "PSERS investment professionals and consultants are well aware of the risks involved with this type of emerging market investment, as well as the pros and cons involved in all its investment strategies and portfolios."[7]

103.    "By June 2020, the last time PSERS filed a disclosure on its holdings, the value of its investment in OilFlow had fallen by more than a fifth."[8]

104.    Currently, PSERS investment staff estimate that the investment will perform at 7.25%, about 5% lower than advertised, and well below a comparable S&P 500 value fund, a time-tested investment, within minimal expenses that have predictably performed at an average rate of 10.7% for the past 30 years.

***Prison Payphones: Fined for Gouging Prisoners Calling Home: A 15-Minute Call for $25***

105.    PSERS also decided to invest the teacher pension funds with the private equity firm Platinum Equity,[9] which sold them an investment in Securus Technologies Inc. which is "one of

---

[6] Cayman Islands Stock Exchange, *2018 Oilflow Spv 1 Dac: Company Announcement notice*, https://www.csx.ky/companies/announcement.asp?Id=6881 (last visited June 4, 2021).
[7] *Id.*
[8] *Id.*
[9] PSERB Resolution 2019-36, Platinum Equity Capital Partners V, L.P. (Aug. 29, 2019), https://www.psers.pa.gov/About/Board/Resolutions/Pages/2019-Board-Meeting-Resolutions.aspx# (last visited June 9, 2021).

Case ID: 210601197

Ex. A - 0018

the largest providers of phone, email, money transfer, and electronic monitoring services to prisons in the US."[10]

106.    Recently, Securus came under fire for price gouging prisoners as much as $25 for a 15-minute phone call.[11]

107.    Securus' subsidiary "JPay" has been accused of exploiting "low-income communities by charging 35% in fees for $20 money transfers to incarcerated loved ones."[12]

108.    Securus' actions spurred several prison reform petitions causing its value to plummet. In December 2020, Worth Rises, a criminal justice reform nonprofit, ran a full-page ad in the New York Times calling on the NBA and 30 of its owners to force Detroit Pistons owner Tom Gores to sell his team because of his ownership of Securus.[13]

109.    The value of Securus' debt recently plummeted, Bloomberg reported late last year.

110.    At the beginning of 2019, Securus' debt was trading at par, but in early 2020, Securus' first-lien debt has traded as low as 68 cents on the dollar and its second lien debt as low as 45 cents on the dollar.[14]

111.    Messrs. Grell and Grossman, along with Defendant Hamilton Lane, who, among other roles, provides advice to PSERS and manages its private equity investments, recommended

---

[10] Private Equity Stakeholder Project, *Platinum Equity's Not So Securus Investment*, (May 21, 2019), https://pestakeholder.org/report/platinum-equitys-not-so-securus-investment/ (last visited June 9, 2021).

[11] *Id.*

[12] *Id.*

[13] Rod Beard, *Piston's owner Tom Gores reaffirms commitment to reform controversial prison phone company*, The Detroit News, (Dec. 28, 2020) https://www.detroitnews.com/story/sports/nba/pistons/2020/12/28/pistons-owner-tom-gores-reaffirms-commitment-reform-controversial-prison-phone-company/4059523001/ (last visited June 10, 2021).

[14] *Platinum Equity's prison telecom company Securus sees debt trade at up to 50 percent discount*, (Feb. 6, 2020), The Private Equity Stakeholder Project https://pestakeholder.org/platinum-equitys-prison-telecom-company-securus-sees-debt-trade-at-up-to-50-percent-discount/

Case ID: 210601197

Ex. A - 0019

a commitment of up to $200 million to Platinum Equity Capital Partners V, L.P for the investment.[15]

112.    To date, Messrs. Grossman and Grell, and Defendant Hamilton Lane have recommended commitments to various Platinum Equity Capital Partners funds and assets totaling $1.285 billion dollars, committing $160 million in 2018 and an additional $300 million in 2019, alone.

113.    The estimated losses from the investment total in the tens of millions of dollars.

114.    From the outset, the nature of the investment, the risky debt structuring, and the potential for significant losses of plan assets made the invest unsuitable for a public school teachers' retirement plan.

### *The Harrisburg Properties–PSERS Private Real Estate Investments*

115.    On April 18, 2020, it was reported that PSERS was under federal investigation for its authorization of $13.5 million used to purchase properties and *demolish* buildings near its Harrisburg headquarters, including the former home of the Harrisburg Patriot-News newspaper, which has since been demolished. [16]

116.    PSERS has not revealed any plans for the abandoned property "which it purchased for $1.6 million in December 2017, about $1 million more than it was initially sold for just a few months earlier."[17]

117.    Through Defendant 812 Market, PSERS has invested the following amounts in the

---

[15] PSERS Public Investment Memorandum, *Platinum Equity Capital Partners V, L.P. Private Equity Fund Commitment*, (April 29, 2019), https://www.psers.pa.gov/About/Board/Resolutions/Documents/2018/res06.pdf (last visited June 9, 2021).

[16] McCoy, Joseph N. DiStefano and Craig R. "FBI probes big pension fund's $13.5 million in Harrisburg projects". *The Philadelphia Inquirer*. Retrieved 2021-04-19.

[17] J.D. Prose, *PA Teachers Pension System Embroiled In Controversy. What to know,* Pennsylvania State Capital Bureau, (May 4, 2021). https://www.ydr.com/story/news/2021/05/04/pennsylvania-teachers-retirement-system-psers-investigation/7400488002/

Case ID: 210601197

Ex. A - 0020

undeveloped properties:

  a)      a $1.6 million purchase of the land and building formerly housing the

          Patriot-News printing plant and newsroom in 2017;

  b)      a $450,000 purchase of three parking lots located near 10th and Market

          Streets in 2018;

  c)      a $200,000 purchase of a property on Market Street in 2019; and

  d)      a $785,000 purchase of two parking lots on Market Street in 2020.

118.    Amid a federal investigation, PSERS amended its public disclosure statement for

"812 Market," its nonprofit holding company created in 2017 to hold the title to the Harrisburg

real estate.[18]

119.    Prior to the amendments, the forms indicate that Mr. Grossman and two of his staff

are members of the 812 Market board and were receiving payment as employees.[19]

120.    Reports indicate that Mr. Grossman is the highest-paid employee of the state of

Pennsylvania, making $485,421 a year.

121.    The Harrisburg properties are assets of PSERS Private Real Estate asset class,

managed by Messrs. Grell and Grossman with the advice of Defendant Hamilton Lane.

122.    Even after putting $7 million into the undeveloped properties, some of which

contained hazardous waste, Messrs. Grell and Grossman requested approval of an additional $5

million for 812 Market real estate investment, including the status of property acquisitions;

---

[18] Angela Couloumbis, Craig R. Mccoy And Joseph N. Distefano, *Facing FBI probe, PSERS backtracks on disclosure that staffers were on both sides of real estate dealings*, Spotlight PA and The Philadelphia Inquirer, (June 9, 2021) https://www.post-gazette.com/business/career-workplace/2021/06/09/FBI-probe-PSERS-state-pennsylvania-workers-teachers-pension-fund-retirement-real-estate/stories/202106090102

[19] Id.

Case ID: 210601197

Ex. A - 0021

abatement, and demolition activities.

123.    Senator Katie Muth, a 2021 PSERB member, "took the unusual step of suing PSERS in Commonwealth Court in a bid to force the fund to turn over the records" stating that "the fund was harming the ability of the board members to exercise oversight."[20]

124.    Since no development of the properties has occurred, and the fund is holding the properties undeveloped and not selling them, the losses appear to be $13.5 million.

125.    On Dec. 31, 2020, PSERS' pension investments stood at $62.4 billion. If PSERS' investment performance had been as good as the best public plans over the last ten years, those assets would now be approximately $80.87 billion. If PSERS' performance had simply been average, those assets would now be approximately $67.73 billion.



**Aon Investment Consultants' Revisions to Performance Measures**

126.    Defendants' conduct in reviewing, recommending, and managing these investments was reckless and evidenced a substantial lack of concern for whether injury or damage to the Plan or its participants and beneficiaries would occur, in that Defendants overpromised what the Fund would provide its members.

127.    Upon information and belief, the Board and its professional staff of investment

---

[20] Id.

Case ID: 210601197

Ex. A - 0022

advisors knew the performance metric that would have been reported prior to Aon Investment Consultants' "revisions" would have triggered statutory contribution increases from PSERS enrollees.

128.    Messrs. Grell and Grossman tasked Aon to review and revise investment performance numbers from years dating back to 2010.

129.    Then-State Treasurer, and PSERS Board member, Joseph Torsella criticized Defendants Grell and Grossman's plan to "revise and improve" investment figures for past performance in October 2020.[21]

130.    In response to the criticism, Mr. Grell indicated that the improvements to the performance measurements were "adjustments" based upon late performance information received by the fund from its alternative market investments.

131.    Mr. Grell defended the improvements to the performance numbers, and the Board adopted the revised numbers in December 2020.

132.    During its revisions, Defendant Aon revised performance metrics for years 2010 to 2019.

133.    Changes in the performance measurements for the year 2015 were substantial; the revised number had the effect of increasing the plan's performance by .39%.

134.    The revisions resulted in an average fund performance rate of 6.38%.

135.    Based upon data in the memo from Mr. Grell to Mr. Torsella defending the revisions, the investment returns actually averaged .04% lower.

---

[21] Joseph N. DiStefano, *Bad Math: Pa.'s Biggest Pension Fund Was Warned But Inflated Investment Returns Anyway*, The Philadelphia Inquirer, (April 18, 2021), https://www.inquirer.com/news/psers-grell-pension-teachers-recalculation-20210418.html (last visited June 9, 2021).

Case ID: 210601197

Ex. A - 0023

136.    In March 2021, the Board indicated that the performance percentage calculation was, in fact, erroneous.

137.    The Board indicated that the accurate and actual performance percentage was 6.34%, the percentage established prior to Defendant Aon's revisions.

138.    The Board, and professional investment staff, understood that any performance metric that triggered increased contributions would also result in increased scrutiny of the investments, expenses, and bloated fees paid to investment managers.

139.    As a result of "the error," as of July 1, 2021, the State's public school teachers will have to pay more to keep the Plan afloat.

140.    On April 19, 2021, the PSERS Board passed PSERB Resolution 2021-16, amending PSERB Resolution 2020-52, to increase the contribution rates for certain teachers, "certifying the actual nine-year performance figure of 6.34%." The amended performance figure in this resolution triggers an increase of the annual deduction from the paychecks of approximately 100,000 public school employees.

141.    The next day, on April 20, 2021, after the FBI investigation began, PSERS determined that "circumstances exist to warrant an emergency procurement of an investment consulting firm," wherein Mr. Grossman's role (not title) was assumed by Verus Investments.[22]

142.    Defendant Aon compounded its error by repeating work product year to year without rectifying calculations.

143.    Defendant Aon failed to practice due diligence in vetting and verifying the

---

[22] PSERS Resolution 2021-17, *Re: Engagement of Investment Oversight Consulting Firm* (April 20, 2021). https://www.psers.pa.gov/About/Board/Resolutions/Pages/2021-Board-Meeting-Resolutions.aspx, (last visited June 4, 2021); *See also* https://www.institutionalinvestor.com/article/b1rhmpm6tbg7kt/Pennsylvania-PSERS-Hires-Verus-Investments-in-Emergency-Move.

Case ID: 210601197

Ex. A - 0024

performance values year after year until recently when the error became public knowledge.

144.    As the losses continue to mount, it appears, at present, the Defendants have, individually and collectively, been responsible for millions in losses.

145.    The PSERS plan has paid out tens of millions in excess management fees and charges over the past 10 years.

146.    The PSERS plan is, by current estimates, underfunded by billions of dollars.

147.    More than 100,000 of the State's public school teachers will see their direct defined contribution increase this year by an average of $250-$350 annually and will be paying this increased amount for the next three years at a minimum.

## CLASS ACTION ALLEGATIONS

148.    Plaintiff realleges all preceding allegations as set forth herein.

149.    Plaintiff brings this action, on behalf of himself and all other similarly situated persons whose pension benefits or pension contributions have been or will be affected by Defendants' investment decisions and other wrongful conduct.

150.    The number of people in the Class, approximately 100,000, is so numerous as to make joinder impracticable, and Plaintiff's claims are typical of the claims of the class members, and all claims are based on the same legal and remedial theories.

151.    The questions of law and fact are common to the thousands of members of the Class, and these questions predominate over any question affecting only individual class members.

152.    The principal common issues include whether Defendants violated their fiduciary duties and/or committed negligence, and/or gross negligence.

153.    The claims of the named Plaintiff are typical of the claims of the entire class.

154.    Plaintiff will fairly and adequately protect the interest of all class members under

Case ID: 210601197

Ex. A - 0025

the criteria set forth in Pennsylvania Rule of Civil Procedure 1709, inasmuch as:

a.      Counsel for the Class are experienced in the prosecution of class actions and will adequately represent the interests of the class;

b.      The Plaintiff does not have a conflict of interest with any other members of the Class; and

c.      The representative party and class counsel have adequate financial resources to assure that the interests of the Class will be adequately protected and will not be harmed.

155.    A class action provides a fair and efficient method for adjudicating the controversy under the criteria set forth in Pennsylvania Rule of Civil Procedure 1708, inasmuch as:

a.      Common questions of law and fact predominate over any questions affecting only individual members of the Class;

b.      The size of the Class will not present management difficulties, and on the contrary the size of the Class makes a class action a far more efficient method of resolving this dispute than individual actions;

c.      The prosecution of individual actions would risk presenting the Defendants with inconsistent or varying results, thereby raising the prospect that Defendants would be governed by incompatible standards of conduct;

d.      In view of the complexity and expense of litigation, the separate claims of individual members of the Class would not be of sufficient amount to justify effective prosecution of the action; and

e.      Defendants have acted on grounds and in ways generally applicable to the Class, thereby making final equitable or declaratory relief appropriate with respect to the Class.

156.    Maintaining this action as a class action is superior to other available methods of

Case ID: 210601197

Ex. A - 0026

adjudication since it will promote the convenient administration of justice and will achieve a fair and efficient adjudication of the controversy in this matter because there are thousands of potential Class members.

157.    Final, equitable, and declaratory relief are appropriate because Defendants should be required, in addition to the payment of damages, to begin exercising their duty of due care.

158.    Defendants, and each of them, are jointly and severally liable for the financial injuries and damages referred to herein.

159.    Plaintiff demands trial by jury.

## COUNT I–BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

160.    Plaintiff realleges all preceding allegations as if set forth herein.

161.    Defendants served as fiduciaries of the PSERS Defined Benefit Plan, in a variety of respects under trust, statutory, and common law.

162.    At all relevant times, Defendants were fiduciaries and duty-bound to discharge their fiduciary duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and with utmost, undivided loyalty to their interests, and with the care of a reasonably prudent person.

163.    In fact, by law, the Defendants directly or indirectly owed a duty to members to exercise a degree of judgment, skill and care under the circumstances then prevailing which persons of prudence, discretion, and intelligence who are familiar with such matters exercise in the management of their own affairs not in regard to speculation, but in regard to *the permanent disposition of the fund*, considering the probable income to be derived therefrom as well as the probable safety of their capital.

Case ID: 210601197

Ex. A - 0027

164.    Defendants breached their fiduciary duties by way of the conduct described herein.

165.    Defendants' actions have caused harm to the Plan and to the Plaintiff Class by substantially reducing the level of benefits available under the Plan and requiring increased contributions to increase the Plan's funding levels and stabilize the Plan.

166.    But for the actions of Defendants, direct contributions from the Plaintiff Class would not have been required at the level that will be required as of July 1, 2021. In other words, wages that could have been used for other personal and family expenses are now required to be contributed to the Plan to make up for the investment losses.

167.    Indeed, Defendants' actions have caused direct harm to the Plaintiff Class by requiring the mandatory increased contributions to the Plan based on faulty investment return rate established by Defendants.

168.    Those faulty portfolio analyses increased mandatory contributions of the Plaintiff Class, taken from their wages, to shore-up the funding status of the PSERS Defined Benefit Plan.

169.    Once errors surrounding the rate of return were uncovered, the nature and type of investments held by the Plan were also discovered as many of the investments were "alternative" in nature, meaning outside of traditional public reporting requirements.

170.    But for Defendants' concealment of a likely claim for liability, the Plan would have discovered a number of errors relating to investment performance, investment in unsuitable ventures, and the deep and expansive funding of alternative investments.

171.    Defendants owed the Plan a duty of full and honest disclosure in connection with its performance of services to the Plan.

172.    Defendants concealed their errors, preventing the harm done to Plaintiff, the Plaintiff Class, and the Fund from being corrected in time to avoid its losses and the triggering of

Case ID: 210601197

Ex. A - 0028

increased contributions.

173.    The Plan reasonably, but detrimentally, relied on Defendants' concealment of its errors and thereby experienced a significant shortfall in the Plan.

174.    These investments were improper and unsuitable upon cursory review, overpriced, and failed to meet the basic funding requirements of the Plan, thereby causing the shortfall.

175.    Defendants also charged excessive fees to the Plan, further diminishing the sparse returns on the investments they recommended.

176.    Messrs. Grossman and Grell, who were charged by statute and by the PSERS Board with managing the Plan and its assets for the exclusive benefit of the Plan's members, approved the excessive fees and carried interest payments charged by Consultants and, along with Defendant Hamilton Lane, recommended to the Board that the payments, and the investments they accompanied, were prudent investments of the Fund's assets.

177.    This all occurred while Messrs. Grossman and Grell, and select staff members, were treated to luxury business trips in exotic locations, planned by various consultants they were to be evaluating and paid for out of the retirement assets of Pennsylvania's public school teachers.

178.    Defendants' actions are the proximate cause of Plaintiff's damages.

179.    Accordingly, Plaintiff and the Class members are entitled to such equitable and remedial relief as this Court deems appropriate, including equitable relief to make the Plan whole.

WHEREFORE, Plaintiff and the Class demand judgment in their favor and against Defendants, and each of them, in an amount in excess of $50,000, together with injunctive relief, lawful interest, delay damages, attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

Case ID: 210601197

Ex. A - 0029

## COUNT II–AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY
## AGAINST ALL DEFENDANTS

180.    Plaintiff realleges all preceding allegations as if set forth herein.

181.    Defendants served in the capacity of investment managers and advisors who offered, marketed, and sold professional investment services to the PSERS retirement plans, Plan members, and the Plan's Trustees via the Internal Advisor Defendants.

182.    Defendants were aware that the PSERS Trustees were fiduciaries operating under statutory and common law and owed fiduciary duties to the retirement system's members, including Plaintiff and the Plaintiff Class, as were Messrs. Grell and Grossman.

183.    Defendants knew that recommending improper investment vehicles that did not provide expected rates of return and/or had those rates diminished by excessive management fees would trigger mandatory contributions from the Plaintiff Class.

184.    Through their relationship with Messrs. Grell and Grossman, the Defendants had actual knowledge that the actions of their advice and recommendations were likely to imperil the financial health and soundness of the Plan, and result in clear breaches of fiduciary duties by PSERS Trustees and internal investment professionals.

185.    Messrs. Grell and Grossman sought and received Defendants' assistance in furthering their breaches, by, among other things, having Defendants certify the health of the defined benefit plan in order to avoid triggering the mandatory contribution requirements.

186.    To that end, Defendant Aon revised past performance figures, establishing an inaccurate performance rate that would avoid triggering increased member contributions and extensive inspection of Defendants' conduct.

187.    During the course of the engagement of Defendants as advisors for the Plan, Defendants concealed its errors, including, among other things, the impact of those errors on the

28

Ex. A - 0030

status of the Plan and that the Plan would not have sufficient money to cover all of the benefits.

188.    Defendant 812 Market Street, by and through Mr. Grossman, acquired real estate holdings in Harrisburg, PA for well over market value and demolished the buildings on those properties.

189.    Defendants made several misrepresentations of material fact to the Plan regarding, among other things, the status of the PSERS Plan; the appropriate measure to determine the financial ability to fund the Plan and/or the necessity for contribution rate increases; and the financial strength of the Plan.

190.    Defendants aided and abetted Messrs. Grell and Grossman in their fiduciary breaches, by among other things, authoring correspondence disseminated to retirees and PSERB which were intended to mislead them on the health of the PSERS Fund and recommending volatile and imprudent investments.

191.    Such actions amounted to substantial assistance in the commission of a fiduciary breach.

192.    Indeed, Defendants had actual knowledge of the breach of the fiduciary duties owed to Plaintiff and the Class.

193.    Defendants' assistance caused the losses in both defined benefit plan and has required increased contributions from the Plaintiff Class.

194.    Plaintiff and the Class, and their defined benefits plan, have suffered severe, consequential damages in an amount to be determined as a result.

WHEREFORE, Plaintiff and the Class demand judgment in their favor and against the Defendants, and each of them, in an amount in excess of $50,000, together with injunctive relief, lawful interest, delay damages, attorneys' fees, costs of suit, and such other relief as the Court

Case ID: 210601197

Ex. A - 0031

deems just and proper.

## COUNT III – NEGLIGENCE / GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

195.    Plaintiff realleges all preceding allegations as set forth herein.

196.    Defendants owed the Plan and the Class a duty to exercise due care and skill in providing services to the Plan.

197.    Defendants breached their duties in negligently analyzing, assessing, and communicating the financial status of the Plan and in failing to provide services consistent with a reasonably prudent advisor, and as otherwise set forth herein.

198.    By negligently, willfully, recklessly, wantonly, and repeatedly committing gross errors and failing to exercise due care and skill in providing services to the Plan and in failing to promptly discover and disclose those errors to the Trustees, Defendants breached its duties to the Plan and its participants and beneficiaries.

199.    Defendants' actions were grossly negligent.

200.    As a direct and proximate result of Defendants' gross negligence, willful, wanton, and reckless misconduct, Plaintiff has suffered significant damages.

201.    By reason of the foregoing, the Plan and the Plaintiff Class have suffered significant damages in the hundreds of millions of dollars, the exact amount to be determined at trial.

202.    Defendants owed the Plan and the Class a duty of full, honest, and accurate disclosure in connection with the performance of its advisory services.

203.    Defendants knew, or should have known, that the representations it made to Plaintiff were false when made, or such representations were made recklessly and/or negligently.

204.    Defendants intended that the Plan would rely on the representations that Defendant

Case ID: 210601197

Ex. A - 0032

made regarding the investments.

205.    The Plan reasonably, but detrimentally, relied on Defendants' negligent, reckless, and/or fraudulent misrepresentations of material fact.

206.    Due to Defendant's negligent, reckless, and/or fraudulent misrepresentations about the expected return of the investments and risks associated with the investments, the Plan was damaged in the hundreds of millions of dollars.

207.    By reason of the foregoing, the Plan and Plaintiff and other members of the Class have suffered significant damages in the hundreds of millions of dollars, the exact amount to be determined at trial.

WHEREFORE, Plaintiff and the Class demand judgment in their favor and against Defendants, and each of them, in an amount in excess of $50,000, together with injunctive relief, lawful interest, delay damages, attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

Respectfully submitted,

**MCLAUGHLIN & LAURICELLA, P.C.**

By:     /s/Gregory B. Heller
       Gregory B. Heller

**MANTESE HONIGMAN, P.C.**
Gerard Mantese (*pro hac vice forthcoming*)

**J. J. CONWAY LAW**
John J. Conway (*pro hac vice forthcoming*)

Attorneys for Plaintiff

Date:   June 18, 2021

Case ID: 210601197

Ex. A - 0033

## <u>VERIFICATION</u>

I hereby state that I am the Plaintiff in the foregoing action, and that the attached Complaint is based upon information I have furnished to my counsel and information that has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not mine. I have read the attached Complaint and to the extent the facts set forth therein are based upon information I have given to counsel, they are true and correct to the best of my knowledge, information and belief. To the extent that the content of the Complaint is that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

_Kevin Steinke (Jun 16, 2021 15:38 EDT)_

Kevin Steinke

Date: Jun 16, 2021

**IN THE COURT OF COMMON PLEAS OF**
**PHILADELPHIA COUNTY, PENNSYLVANIA**

*Filed and Attested by the*
*Office of Judicial Records*
*23 AUG 2021 03:22 pm*
*S. RICE*

| | | |
|---|---|---|
| KEVIN STEINKE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL DIVISION |
| | ) | |
| v. | ) | COMMERCE PROGRAM |
| | ) | |
| AON INVESTMENTS USA, INC., | ) | Case ID: 210601197 |
| HAMILTON LANE ADVISORS, L.L.C., | ) | |
| and 812 MARKET STREET, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**AON INVESTMENTS USA, INC.'S**
**PRELIMINARY OBJECTIONS TO THE COMPLAINT**

Case ID: 210601197
Control No.: 21085865

Ex. A - 0035

Pursuant to Pennsylvania Rule of Civil Procedure 1028, Defendant Aon Investments USA, Inc. ("Aon"), by its undersigned attorneys, hereby raises preliminary objections[1] to the Complaint filed on June 18, 2021 by Plaintiff Kevin Steinke ("Plaintiff"), and in support thereof avers as follows:

## INTRODUCTION

1.       Plaintiff is a middle school teacher who resides in Pennsylvania.  Compl. ¶ 2.

2.       The Pennsylvania School Employee Retirement System ("PSERS") operates by receiving retirement funds in trust, investing those funds, and then distributing funds to those in retirement.  *Id.* ¶¶ 28-30.  The PSERS Plan currently holds over $64 billion in trust assets.  *Id.*  An independent fifteen-member board known as the Public School Employee Retirement Board ("PSERB") oversees the PSERS Plan and its investment activities.  *Id.* ¶ 32; 24 Pa. C.S.A. § 8501(a).  PSERB board members owe fiduciary duties to the participants who enroll in and contribute to the PSERS Plan.  *Id.*; 24 Pa. C.S.A. § 8521(e).

3.       Plaintiff is a current participant in the "PSERS Defined Benefit Plan."  *Id.* ¶ 2.

4.       In order to manage the PSERS Plan's investment portfolio on its enrollees' behalf, the PSERB contracts externally for services with a variety of "independent contractors."  *Id.* ¶ 33. As one such independent contractor, Aon provided services to the PSERB as a "General Investment Consultant."  *Id.* ¶ 4.  Other independent contractors provided services to the PSERB that was specific to alternative and private market investments.  *Id.* ¶¶ 6, 117.

---

[1] Aon accepts the factual allegations contained in the Complaint as true solely for the purposes of the preliminary objections stated herein.

Case ID: 210601197
Control No.: 21083865

Ex. A - 0036

5.      Plaintiff alleges that the PSERS Plan's investment portfolio has become encumbered by an "unreasonably risky and unjustified alternative investment portfolio." *Id.* ¶¶ 52-68, 88-94, 105-25.

6.      Following a "clerical" accounting error, and the correction of that error, the long-term performance return of PSERS Plan's assets was determined to be 6.34%. *Id.* ¶¶ 42, 137.

7.      Pursuant to modern reforms to PSERS, that performance return has resulted in increased contribution rates among certain categories of public school employees. *Id.* ¶¶ 17-19, 50.

### Preliminary Objection Pursuant to Pa. R. C. P. 1028(a)(4)
### (Demurrer - Standing)

8.      Under Pennsylvania Rule of Civil Procedure 1028(a)(4), a defendant may challenge a plaintiff's standing to bring the action. *McConville v. City of Philadelphia,* 80 A.3d 836, 842 (Pa. Cmwlth. 2013) (interpreting preliminary objection based on lack of standing "as being in the nature of a demurrer under Rule 1028(a)(4)").

9.      In Pennsylvania, "a party seeking judicial resolution of a controversy must establish as a threshold matter that he has standing to maintain the action." *Johnson v. Am. Standard*, 8 A.3d 318, 329 (Pa. 2010).  Standing is a "core jurisprudential requirement that looks to the party bringing a legal challenge and asks whether that party as actually been aggrieved as a prerequisite before the court will consider the merits of the legal challenge itself." *Com. ex rel. Jud. Conduct Bd. v. Griffin*, 918 A.2d 87, 93 (Pa. 2007)(citations and quotations omitted).  A "party who is not adversely affected by the matter he seeks to challenge is not 'aggrieved' and therefore does not have standing." *Id.*  An individual "can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation." *Fumo v. City of Philadelphia*, 972 A.2d 487 (Pa. 2009); *see also Lal v. Ameriquest Mortg. Co.*, 858 A.2d

Case ID: 210601197
Control No.: 21083865

Ex. A - 0037

119, 123 (Pa. Super. Ct. 2004) (affirming preliminary objection and stating that "because appellant has not suffered any personal loss, he has no viable interest in the outcome of this case."). A challenge to a party's standing to maintain the action raises a legal question. *Fumo*, 972 A.2d at 496.

10.    In the context of challenges to retirement plan management, whether the plaintiff is enrolled in a "defined-benefit plan" or a "defined-contribution plan" is of "decisive importance" to the standing analysis. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020); *see also Overstreet v. Mayberry*, 603 S.W.3d 244, 249 (Ky. 2020); *Lee v. Municipality of Bethel Park*, 626 A.2d 1260, 1263 (Pa. Cmwlth. 1993). Where a plaintiff is enrolled in a defined benefit plan, he lacks any stake in the outcome of—and, therefore, the standing to bring—litigation over alleged plan mismanagement. *Id.*

11.    Because plaintiff repeatedly alleges that he—and the putative class he seeks to represent—participate in "the PSERS Defined Benefit Plan," he fails to allege that he has any stake in the outcome of litigation over alleged losses resulting from the PSERS Plan's alleged shifting of assets into alternative or private markets. Compl. ¶ 3; *see also* ¶¶ 1, 2, 38, 45, 194. Having failed to set forth any stake in the outcome of this litigation, plaintiff lacks standing to maintain it.

12.    Nor do any increases in plaintiff's retirement contributions qualify as an adverse effect sufficient to provide him with standing. The same Pennsylvania statutory provision that gives rise to the alleged increases among PSERS participants also mandates that those same increases be "credited," with interest, to each participant's retirement account. 24 Pa. C.S.A. § 8321(b) (providing for "shared-risk contribution rates" that may fluctuate based on the performance rate of PSERS' assets); 24 Pa. C.S.A. § 8502(m) (mandating that "each member's contributions, including payroll deductions…shared-risk contributions and all other payments" be

3

Ex. A  0038

"credited to the account of such member" along with "statutory interest until the date of termination of service").  Plaintiff fails to appreciate that he suffers no actual loss from these contribution increases.

13.     Having failed to articulate a personal, adverse effect in the allegations of the Complaint, plaintiff lacks standing to bring this action.

WHEREFORE, Aon requests that this Court sustain its Preliminary Objection and dismiss the Complaint, in its entirety.

### Preliminary Objection Pursuant to Pa. R. C. P. 1028(a)(4)
### (Demurrer – Failure to State a Claim)

14.     Under Pennsylvania Rule of Civil Procedure 1028(a)(4), a defendant may challenge the legal sufficiency of the causes of action alleged in a complaint by filing a demurrer.  A court should sustain a preliminary objection on demurrer grounds "where it appears from the face of the complaint that recovery upon the facts alleged is not permitted as a matter of law."  *Kelly v. Kelly*, 887 A.2d 788, 790 (Pa. Super. Ct. 2005).

15.     Because Pennsylvania is a fact pleading state, "a pleading must not only apprise the opposing party of the asserted claim, 'it must also formulate the issues by summarizing those facts essential to support the claim.'" *Richardson v. Wetzel*, 74 A.3d 353, 356–57 (Pa. Cmwlth. 2013) (quoting *Sevin v. Kelshaw*, 611 A.2d 1232, 1235 (Pa. Super. Ct. 1992)).

16.     Pennsylvania law also prohibits group pleading.  *E.g., Richardson v. Walsh*, 2016 WL 7335824, at *6-7 (Pa. Cmwlth. Dec. 19, 2016) (affirming dismissal of complaint where plaintiff had only "generally designated" individual defendants as alleged tortfeasors).  In ruling on preliminary objections, a court "need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion."   *Dorfman v. Pennsylvania Soc. Servs. Union-Local 668*, 752 A.2d 933, 936 (Pa. Cmwlth. 2000).

Case ID: 210601197
Control No.: 21083865

Ex. A - 0039

17.     Plaintiff fails to state legally sufficient claims against Aon for breach of fiduciary duty (Count I), aiding and abetting a breach of fiduciary duty (Count II), or negligence / gross negligence (Count III).

<u>Count I — Breach of Fiduciary Duty</u>

18.     In Count I, plaintiff asserts a breach of fiduciary duty claim against all defendants, including Aon. *Id.* ¶¶ 160-79.

19.     Plaintiff fails to plead a legally sufficient breach of fiduciary duty claim against Aon for at least two independent reasons.

20.     First, plaintiff fails to allege the existence of a fiduciary relationship between him and Aon.  Plaintiff fails to allege that Aon ever functioned as a PSERB "employee" or "agent" within the meaning of 24 Pa. C.S.A. § 8521(e).

21.     Second, Plaintiff has not alleged that Aon breached any alleged fiduciary relationship by acting negligently or intentionally failing to act in good faith.  Plaintiff never sets forth alleged facts showing Aon's involvement in any of the alleged investments of PSERS Plan assets into alternative or private markets.  Aon's alleged conduct was within the discretion afforded to investment consultants under Pennsylvania law to act as a "prudent investor would, by considering the purposes, terms, and other circumstances" of the assets and by pursuing an "overall investment strategy." *Perlberger ex rel. Brennen v. Wachovia Bank, N.A.*, 2004 WL 2988520, *3 (E.D. Pa. Dec. 20, 2004).  Nor do any of the conclusory allegations in the complaint regarding Aon's involvement in the calculation of the PSERS Plan's long-term performance return rise to the level of fact pleading required by this Court.  *Wetzel*, 74 A.3d at 356–57.

WHEREFORE, Aon requests that this Court sustain its Preliminary Objection and dismiss Count I of the Complaint.

Case ID: 210601197
Control No.: 21063865

Ex. A  0040

<u>Count II — Aiding and Abetting a Breach of Fiduciary Duty</u>

22.    In Count II, plaintiff asserts a claim for aiding and abetting a breach of fiduciary duty against all defendants, including Aon.  Compl. ¶¶ 180-94.

23.    Plaintiff fails to plead a legally sufficient claim for aiding and abetting a breach of fiduciary duty claim against Aon for two independent reasons.

24.    First, plaintiff fails to set forth any well-pled factual allegations from which the Court may infer the occurrence of a breach of fiduciary duty owed to another.  Instead, plaintiff relies on conclusory allegations such as that the PSERS Plan's investment staff "sought and received Defendants' assistance in furthering their breaches," *id.* ¶ 185, and that "Defendants," generally, "aided and abetted [them] in their fiduciary breaches[.]" *Id.* ¶ 190.  These statements fail to adequately summarize the alleged facts relating to any breach of fiduciary owed to another.

25.    Second, plaintiff fails to allege that Aon had actual knowledge of any fiduciary duty breach.  Plaintiff engages in impermissible group pleading when he alleges that "[t]hrough their relationship with Messrs. Grell and Grossman, Defendants had actual knowledge" of supposed fiduciary breaches. *Walsh*, 2016 WL 7335824, at *6-7.  Additionally, plaintiff's allegation also fails to plead sufficient facts about how Aon—or either of the other defendants—acquired any such actual knowledge. *G.B. v. Jade Nails Hair Spa*, 2021 WL 979837 (E.D. Pa. Mar. 16, 2021) (dismissing complaint for failure to "plead facts demonstrating that [defendant] had actual knowledge" of the alleged violation of Pennsylvania state law).

26.    Third, plaintiff fails to allege that Aon provided substantial assistance or encouragement to any party's alleged fiduciary breach.  Plaintiffs' only allegations on this topic are either set forth in the form of impermissible group pleading, *e.g.* Compl. ¶ 183, or lack sufficient factual content to satisfy this Court's pleading requirements.

6

Case ID: 210601197
Control No.: 21083865

Ex. A 0043

WHEREFORE, Aon requests that this Court sustain its Preliminary Objection and dismiss Count II of the Complaint.

<u>Count III — Negligence / Gross Negligence</u>

27.     In Count IIII, plaintiff asserts a claim for "negligence / gross negligence" against all defendants, including Aon. *Id.* ¶¶ 195-207.

28.     Plaintiff fails to plead a legally sufficient claim for negligence against Aon for four independent reasons.

29.     First, the Complaint fails to allege that Aon owed any legally recognized duty to Plaintiff.  "Duty, in any given situation, is predicated upon the relationship existing between the parties at a particular time[.]"  *Burman v. Golay & Co., Inc.*, 616 A.2d 657, 659 (Pa. Super. Ct. 1992); *see also J.E.J. v. Tri-County Big Brothers/Big Sisters, Inc.*, 692 A.2d 582, 584 (Pa. Super. Ct. 1997) ("When considering the question of duty, it is necessary to determine whether a defendant is under any obligation for the benefit of the particular plaintiff.").  The complaint alleges no relationship between Aon and the plaintiff, let alone one that could give rise to a legally recognized duty.

30.     Second, the complaint fails to allege that Aon breached a specified standard of care. Most of plaintiff' allegations in this regard fail as impermissible group pleading. *E.g.* ¶ 198.  And with respect to the calculation of the PSERS Plan's long-term performance returns, plaintiff never summarizes sufficient alleged facts showing that Aon acted in any manner that "constitutes ordinary negligence, such as inadvertence, mistake, or errors of judgment."  *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 447 (Pa. Super. Ct. 1987).

31.     Third, plaintiff has failed to allege a causal connection between Aon's alleged conduct and the alleged injury.  Plaintiff does not allege that Aon provided advice on any specific

Case ID: 210601197
Control No.: 21058865

Ex. A  0042

PSERB investment decision. Although Plaintiff alleges that Aon was involved in an initial miscalculation of the PSERS Plan's performance rate, Compl. ¶¶ 126-140, it is ultimately the investments themselves—and not an outside consultant's measurement of the overall performance of the PSERS Plan—that allegedly injured the PSERS Plan, not Aon's conduct.

32.     Fourth, plaintiff fails to allege that he has suffered any actual loss or damage. Any alleged increases in plaintiff's periodic contributions to his own retirement account will be to his benefit—not his loss. Nor has plaintiff alleged that he will be unable to receive his promised benefits upon retirement.

WHEREFORE, Aon requests that this Court sustain its Preliminary Objection and dismiss Count III of the Complaint.

Dated: August 23, 2021                    /s/ *Robert N. Feltoon*

Kevin Dooley Kent (No. 85962)
Robert N. Feltoon (No. 58197)
Andrew K. Garden (No. 314708)
CONRAD O'BRIEN PC
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Ph: (215) 864-9600/ Fax: (215) 864-9620
Email: kkent@conradobrien.com
        rfeltoon@conradobrien.com
        agarden@conradobrien.com

Craig C. Martin (cmartin@willkie.com)
(*pro hac vice forthcoming*)
Amanda S. Amert (aamert@willkie.com)
(*pro hac vice forthcoming*)
Matt D. Basil (mbasil@willkie.com)
(*pro hac vice forthcoming*)
Samuel J. Gamer (sgamer@willkie.com)
(*pro hac vice forthcoming*)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle, Suite 5000
Chicago, Illinois 60654
Tel: (312) 728-9000
*Counsel for Aon Investments USA, Inc.*

Case ID: 210601197
Control No.: 21083865

Ex. A - 0043

**CERTIFICATE OF SERVICE**

I, Robert N. Feltoon, Esquire, hereby certify that on the date set forth below I caused a true and correct copy of the foregoing document to be electronically filed using the Court's electronic filing system, and that the document is available for downloading and viewing there to all counsel of record.

Dated: August 23, 2021                              /s/ Robert N. Feltoon

Case ID: 210601197
Control No.: 21084865

Ex. A - 0044

# IN THE COURT OF COMMON PLEAS OF
## PHILADELPHIA COUNTY, PENNSYLVANIA

KEVIN STEINKE,                                      )
                                                    )
    Plaintiff,                                  )    CIVIL DIVISION
                                                    )
    v.                                          )    COMMERCE PROGRAM
                                                    )
AON INVESTMENTS USA, INC.,                          )    Case ID: 210601197
HAMILTON LANE ADVISORS, L.L.C.,                     )
and 812 MARKET STREET, LLC,                         )
                                                    )
    Defendants.                                 )
                                                    )
                                                    )

*Filed and Attested by the
Office of Judicial Records
23 AUG 2021 03:22 pm
S. RICE*

## BRIEF IN SUPPORT OF AON INVESTMENTS USA, INC.'S
## <u>PRELIMINARY OBJECTIONS TO THE COMPLAINT</u>

Case ID: 210601197
Control No.: 21083865

Ex. A - 0045

## TABLE OF CONTENTS

MATTER BEFORE THE COURT .................................................................................. 1

STATEMENT OF QUESTION(S) INVOLVED .......................................................... 1

FACTS ............................................................................................................................ 2

ARGUMENT ................................................................................................................. 5

I.      THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF
        LACKS STANDING. ....................................................................................... 5

II.     THE COURT SHOULD DISMISS THE COMPLAINT AGAINST AON FOR
        FAILURE TO STATE A CLAIM (DEMURRER). ....................................... 10

        A.      In Count I, Plaintiff Fails To Plead A Breach Of Fiduciary Duty Claim
                Against Aon. ......................................................................................... 11

        B.      In Count II, Plaintiff Fails To Plead An Aiding And Abetting A Breach Of
                Fiduciary Duty Claim Against Aon. ..................................................... 15

        C.      In Count III, Plaintiff Fails To Plead A Negligence Claim Against Aon. ............ 16

CONCLUSION AND RELIEF SOUGHT ................................................................. 20

i

Case ID: 210601197
Control No.: 21063865

Ex. A - 0046

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Perlberger ex rel. Brennen v. Wachovia Bank, N.A.,*
2004 WL 2988520 (E.D. Pa. Dec. 20, 2004) .......................................................13

*Burman v. Golay & Co., Inc.,*
616 A.2d 657 (Pa. Super. Ct. 1992) ..................................................................17

*Burns v. Public School Employees' Retirement Bd.,*
853 A.2d 1146 (Pa. Cmwlth. 2004) .....................................................................8

*Condus v. Howard Sav. Bank,*
986 F. Supp. 914 (D.N.J. 1997) .........................................................................12

*DeLollis v. Friedberg, Smith & Co., P.C.,*
933 F. Supp. 2d 354 (D. Conn. 2013) ................................................................17

*DePuy Synthes Sales, Inc. v. Globus Medical, Inc.,*
259 F. Supp. 3d 225 (E.D. Pa. 2017) .................................................................15

*Dorfman v. Pennsylvania Soc. Servs. Union-Local 668,*
752 A.2d 933 (Pa. Cmwlth. 2000) .................................................................11, 16

*Edwin J. Dobson, Jr. Inc. v. Rutgers,*
157 N.J. Super. 357 (Law Div. 1978) .................................................................12

*Feldman v. Hoffman,*
107 A.3d 821 (Pa. Cmwlth. 2014) .....................................................................3, 4

*Feleccia v. Lackawanna College,*
215 A.3d 3 (Pa. 2019) .......................................................................................17

*Fumo v. City of Philadelphia,*
972 A.2d 487 (Pa. 2009) .....................................................................................5

*G.B. v. Jade Nails Hair Spa,*
2021 WL 979837 (E.D. Pa. Mar. 16, 2021) .......................................................15

*Grande v. Starbucks Corp.,*
2019 WL 1455445 (E.D. Pa. Apr. 2, 2019) ........................................................10

*Hicks v. Metro. Edison Co.,*
665 A.2d 529 (Pa. Cmwlth. 1995) ................................................................17, 19

Case ID: 210601197
Control No.: 25083865

Ex. A 0047

*J.E.J. v. Tri-Cty. Big Bros./Big Sisters, Inc.,*
    692 A.2d 582 (Pa. Super. Ct. 1997) ..................................................................17

*Johnson v. Am. Standard,*
    8 A.3d 318 (Pa. 2010) ...........................................................................................5

*Com. ex rel. Jud. Conduct Bd. v. Griffin,*
    918 A.2d 87 (Pa. 2007) .........................................................................................5

*Kelly v. Kelly,*
    887 A.2d 788 (Pa. Super. Ct. 2005) ..................................................................10

*Lal v. Ameriquest Mortg. Co.,*
    858 A.2d 119 (Pa. Super. Ct. 2004) ....................................................................5

*Language Line Servs., Inc. v. Dep't of General Servs.,*
    991 A.2d 383 (Pa. Cmwlth. 2010) .....................................................................12

*Lee v. Municipality of Bethel Park,*
    626 A.2d 1260 (Pa. Cmwlth. 1993) .....................................................................7

*McConville v. City of Philadelphia,*
    80 A.3d 836 (Pa. Cmwlth. 2013) .........................................................................5

*McDaniel v. Merck, Sharp & Dohme,*
    533 A.2d 436 (Pa. Super. Ct. 1987) ..................................................................18

*Overstreet v. Mayberry,*
    603 S.W.3d 244 (Ky. 2020) .........................................................................6, 7, 8

*Paulone v. Paulone,*
    649 A.2d 691 (Pa. Super. Ct. 1994) ....................................................................7

*Potok v. Rebh,*
    2017 WL 1372754 (Pa. Super. Ct. Apr. 13, 2017) .............................................15

*Real-Loomis v. Bryn Mawr Trust Co.,*
    2021 WL 1907487 (E.D. Pa. May 12, 2021) ......................................................10

*Renfro v. Unisys Corp.,*
    2010 WL 1688540 (E.D. Pa. Apr. 26, 2010) ......................................................13

*Richardson v. Walsh,*
    2016 WL 7335824 (Pa. Cmwlth. Dec. 19, 2016) ........................................ *passim*

*Richardson v. Wetzel,*
    74 A.3d 353 (Pa. Cmwlth. 2013) ....................................................10, 14, 15, 16

Case ID: 210601197
Control No.: 21108865

Ex. A 0048

*Seiss v. Sherman,*
    49 Pa. D.&C.4th 367 (Pa. Com. Pl. 2000) ............................................................. 2

*Smith v. MetLife,*
    2009 WL 6057718 (Pa. Com. Pl. Oct. 29, 2009) ................................................. 12

*Snyder v. Crusader Servicing Corp.,*
    231 A.3d 20 (Pa. Super. Ct. 2020) ............................................................... 11, 13

*Telwell, Inc. v. Pub. Sch. Employees' Ret. System,*
    88 A.3d 1079 (Pa. Cmwlth. 2014) ..................................................................... 18

*Thole v. U.S. Bank N.A.,*
    140 S. Ct. 1615 (2020) ............................................................................... 6, 7, 8

*US Coal Corp. v. Dinning,*
    222 A.3d 431 (Pa. Super. Ct. 2019), *reargument denied* (Jan. 7, 2020), *appeal
    denied*, 237 A.3d 388 (Pa. 2020) ..................................................................... 12

**Statutes**

24 Pa. C.S.A. § 8321(b) ....................................................................................... 9

24 Pa. C.S.A. § 8502(m) ...................................................................................... 9

24 Pa. C.S.A. § 8501(a) ....................................................................................... 2

24 Pa. C.S.A. § 8521(e) ................................................................................... 2, 11

**Other Authorities**

Pa. R. Civ. P. 1019(b) ......................................................................................... 18

Pa. R. Civ. P. 1028 ................................................................................... 1, 5, 10

Case ID: 210601197
Control No.: 21083865

Ex. A  0049

## MATTER BEFORE THE COURT

Amid this year's intense public scrutiny of Pennsylvania's public school pension system, plaintiff Kevin Steinke commenced this action against three different independent contractors that provided services to that system.  However, plaintiff lacks standing to maintain this action against, at least, Aon Investments, USA, Inc. ("Aon").  As a self-described participant in a "Defined Benefit" retirement plan, he has no personal stake in his lawsuit's outcome.  Unlike participants in defined contribution plans, participants in defined benefit plans—like plaintiff—receive the same benefits upon retirement regardless of their plan's investment performance.  Even if plaintiff did have standing, his allegations against Aon fall well short of the fact pleading this Court requires, and impermissibly lump Aon together with other independent contractors.  For these reasons, under Pennsylvania Rule of Civil Procedure 1028, the Court should dismiss the complaint for plaintiff's lack of standing, or, in the alternative, the Court should dismiss the complaint against Aon for failure to state a claim.

## STATEMENT OF QUESTION(S) INVOLVED

1.     Should this Court sustain Aon's preliminary objection that plaintiff lacks standing to maintain this action against, at least, Aon, where he has not alleged that any of his future retirement benefits are at risk and where any alleged increases to his retirement contributions will remain tied to his own retirement account?

        Advocated answer: Yes.

2.     Should this Court sustain Aon's preliminary objection that plaintiff has failed to plead any legally sufficient breach of fiduciary duty, aiding or abetting, or negligence claim against Aon, where plaintiff does not allege that Aon was involved in the allegedly risky investments that are the linchpin of plaintiff's claims, but rather made a clerical error that it subsequently corrected?

        Advocated answer: Yes.

1

Case ID: 210601197
Control No.: 25063865

Ex. A - 0050

## FACTS

Plaintiff alleges that he is a middle school teacher who resides in Pennsylvania.[1]  Compl. ¶ 2.  Specifically, plaintiff states that he is a current participant in, and contributes to, the "PSERS Defined Benefit Plan," which is maintained by the Pennsylvania Public School Employee Retirement System ("PSERS").  *Id.*

The PSERS Plan receives retirement funds in trust, invests those funds, and then distributes pension benefits to those in retirement.  *Id.* ¶¶ 28-30.  The PSERS Plan currently holds over $64 billion in trust assets.  *Id.*  An independent fifteen-member board known as the Public School Employee Retirement Board ("PSERB") oversees the PSERS Plan and its investment activities. *Id.* ¶ 32; 24 Pa. C.S.A. § 8501(a).  PSERB board members owe fiduciary duties to the participants who enroll in and contribute to the PSERS Plan.  *Id.*; 24 Pa. C.S.A. § 8521(e).

To carry out those duties and manage the PSERS Plan's investment portfolio, the PSERB employs a staff of investment professionals.  Compl. ¶ 32.  Glenn Grell, the PSERS Plan's Executive Director, and James Grossman, the PSERS Plan's Chief Investment Officer, lead that staff.  *Id.* ¶¶ 27, 73.  The PSERB also contracts externally for services with a variety of "independent contractors," *id.* ¶ 33, including:

- **Aon**: Aon assisted the PSERS Plan's investment professional staff as a "General Investment Consultant."  *Id.* ¶ 4.

- **Hamilton Lane Advisors, L.L.C.** ("Hamilton Lane"):  Hamilton Lane served as a specialized investment consultant to the PSERS Plan that specifically advised on "Alternative, private credit, Private Infrastructure, and Private Real Estate[.]"  *Id.* ¶ 6.

---

[1] For the purposes of these preliminary objections, Aon treats plaintiff's allegations as true.  *Seiss v. Sherman*, 49 Pa. D.&C.4th 367, 369 (Pa. Com. Pl. 2000).

2

Case ID: 210601197
Control No.: 25083865

Ex. A - 005

- **812 Market Street, LLC** ("812 Market"):  812 Market collaborated with the PSERS Plan's professional investment staff to invest PSERS Plan assets in undeveloped property in the Harrisburg area.  *Id.* ¶ 117.  Mr. Grossman and two members of his professional investment staff have received payment from 812 Market.  *Id.* ¶ 119.

Plaintiff alleges that the PSERS Plan has become encumbered by an "unreasonably risky and unjustified alternative investment portfolio." *Id.* ¶¶ 52-68, 88-94, 105-25.  He alleges that the PSERS Plan professional investment staff has shifted the system's investment strategy by pursuing a "trend toward alternative investments" and made a series of "risky bets on alternative investments" that he alleges led the PSERS Plan's investment portfolio to lose billions of dollars. *Id.* ¶¶ 91-92.

Plaintiff alleges that chief among these "bets" was the PSERB's decision to shift assets into private equity investments.  *See id.* ¶ 112.  For example, Plaintiff alleges an August 2019 PSERB resolution, *id.* ¶ 105 & n.9, whereby the PSERB, "in accordance with the recommendation of [a PSERS investment office professional], dated April 29, 2019 and Hamilton Lane, dated April 1, 2019," invested up to $300 million in Platinum Equity Capital Partners V, L.P.  Ex. A, PSERB Resolution 2019-36.[2]  Plaintiff estimates that the PSERB ultimately shifted over $1 billion to Platinum Equity, which, in turn, placed some of those funds in a troubled prison payphone enterprise.  *Id.* ¶¶ 105-14.

Plaintiff also describes the PSERB's shift, following Hamilton Lane's advice, to invest in private real estate assets.  *Id.* ¶ 121.  He points to a series of real estate investments in the Harrisburg

---

[2] Pennsylvania civil procedure permits "[d]ocuments, the contents of which are alleged in the [c]omplaint and which no party questions, but which are not physically attached to the pleading, [to] be considered on motion to dismiss for failure to state a claim." *Feldman v. Hoffman*, 107 A.3d 821, 836 (Pa. Cmwlth. 2014) (citation omitted).

Case ID: 210601197
Control No.: 21052865

Ex. A  0052

area that allegedly caused the PSERS Plan to lose millions of dollars.  *Id.* ¶¶ 115-124.  Plaintiff alleges that the PSERS Plan made many of these investments through defendant 812 Market.  *Id.* ¶ 117.

Plaintiff does not allege that Aon provided advice on any specific PSERB investment decision.  He does, however, allege that Aon had a role in "reviewing performance" of the PSERS Plan's investment portfolio.  *Id.* ¶¶ 4, 126-141.  Namely, he alleges that Aon calculated the "anticipated [long-term] return on the PSERS defined benefit investment portfolio[.]" *Id.* ¶¶ 35; *see also id.* ¶¶ 128-37.  Plaintiff relies on documents that show, on December 3, 2020, the PSERB voted to accept an actuarial report that incorporated a "geometric average time-weighted rate of return, net of fees, [of the PSERS Plan's investment portfolio] for the nine-year period ending June 30, 2020," which Aon had initially calculated to be 6.38%.  *Id.* ¶ 140; Ex. B, PSERB Resolution 2020-52; Ex. C, Buck actuarial report (excerpt), p. 8.[3]  Plaintiff alleges there was an "error" reported regarding Aon's initial calculation and that, on April 19, 2021, the PSERB adopted a corrected nine-year performance figure of 6.34%.  *Id.* ¶¶ 139-40.  As a result of that revised return figure, and "in accordance with the Shared Risk provisions of PSERS' Retirement Code," the PSERB—also on April 19, 2021—altered the contribution rates of the PSERS Plan's enrollees, effective July 1, 2021.  *Id.*; Ex. D, PSERB Resolution 2021-16.

Based on these allegations, plaintiff asserts three causes of action against "Defendants" as a group, without distinguishing among Aon, Hamilton Lane, and 812 Market.  Compl. ¶¶ 160-194.  Rather, he alleges that "Defendants" are liable for a breach of fiduciary duty (Count I), *id.* ¶¶ 160-179; that "Defendants" are liable for aiding and abetting a breach of fiduciary duty (Count II), *id.*

---

[3] *Feldman*, 107 A.3d at 836.

Case ID: 210601197
Control No.: 21058865

Ex. A  0053

¶¶ 180-194; and that "Defendants" are liable for negligence (Count III). *Id.* ¶¶ 195-207. Plaintiff

seeks to pursue his claims as a class action. *Id.* ¶¶ 148-159.

## ARGUMENT

Plaintiff's complaint should be dismissed as to Aon because plaintiff lacks standing to

maintain this action. In addition, each of plaintiff's causes of action against Aon should be

dismissed for the independent reason that he fails to state a claim.

## I. THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF LACKS STANDING.

Plaintiff lacks standing to maintain this action against Aon under Pennsylvania Rule of

Civil Procedure 1028(a)(4). *McConville v. City of Philadelphia,* 80 A.3d 836, 842 (Pa. Cmwlth.

2013) (interpreting preliminary objection based on lack of standing "as being in the nature of a

demurrer under Rule 1028(a)(4)"). In Pennsylvania, "a party seeking judicial resolution of a

controversy must establish as a threshold matter that he has standing to maintain the action."

*Johnson v. Am. Standard*, 8 A.3d 318, 329 (Pa. 2010). Standing is a "core jurisprudential

requirement that looks to the party bringing a legal challenge and asks whether that party has

actually been aggrieved as a prerequisite before the court will consider the merits of the legal

challenge itself." *Com. ex rel. Jud. Conduct Bd. v. Griffin*, 918 A.2d 87, 93 (Pa. 2007) (citation

omitted). An individual "can demonstrate that he has been aggrieved if he can establish that he

has a substantial, direct and immediate interest in the outcome of the litigation." *Fumo v. City of*

*Philadelphia*, 972 A.2d 487, 496 (Pa. 2009); *see also Lal v. Ameriquest Mortg. Co.*, 858 A.2d 119,

123 (Pa. Super. Ct. 2004) (affirming granting of preliminary objection and stating that "because

appellant has not suffered any personal loss, he has no viable interest in the outcome of this case.").

A "party who is not adversely affected by the matter he seeks to challenge is not 'aggrieved' and

Case ID: 210601197
Control No.: 21081865

Ex. A    0054

therefore does not have standing." *Griffin*, 918 A.2d at 93. A challenge to a party's standing to maintain an action raises a legal question. *Fumo*, 972 A.2d at 496.

In the context of challenges to retirement plan management, whether the plaintiff is enrolled in a "defined-benefit plan" or a "defined-contribution plan" is of "decisive importance" to the standing analysis. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020). As *Thole* instructs, this distinction is dispositive because in a defined benefit plan, "retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Id.* By contrast, "in a defined-contribution plan, such as a 401(k) plan, [] retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Id.* In *Thole*, the United States Supreme Court held that plaintiffs lacked standing to bring an action alleging retirement plan mismanagement because, as enrollees in a defined benefit plan, their future benefits would be unaffected by any outcome—win or loss—in the action. *Id.* at 1619.

Although *Thole* involved a challenge brought in federal court under the Employee Retirement Income Security Act of 1974 ("ERISA"), state courts have also recognized these principles as limiting standing for participants in defined benefit plans. Aon is aware of no state courts—including Pennsylvania's—that have rejected *Thole*'s teaching on standing with respect to defined benefit retirement plans.

Last year, for example, in *Overstreet v. Mayberry*, the Kentucky Supreme Court unanimously held that eight public employees—current and retired—lacked standing to bring claims for alleged funding losses sustained by the Kentucky Retirement Systems' defined-benefit retirement plan against certain former plan trustees and officers "as well as private-investment advisors and hedge funds and their principals." 603 S.W.3d 244, 249 (Ky. 2020). The specific

6

causes of action in *Overstreet* were similar to those brought here, including a breach of fiduciary duty claim and an aiding and abetting breach of fiduciary duty claim. *Id.* at 250. Although that court "recognize[d] that ERISA does not apply to government plans," it still "borrow[ed] heavily from the analysis in *Thole*" in finding that the plaintiffs lacked a sufficient injury to confer standing upon them. *Id.* at 263. The court concluded that the "eight Plaintiffs, as beneficiaries of a defined-benefit plan who have received all of their vested benefits so far and are legally entitled to receive their benefits for the rest of their lives, do not have a concrete stake in this case." *Id.* at 266.

Similarly, in *Lee v. Municipality of Bethel Park*, 626 A.2d 1260, 1263 (Pa. Cmwlth. 1993), the court affirmed that participants in Pennsylvania's Police Pension Plan lacked standing to challenge certain transactions involving that plan.[4] The court rejected the plaintiffs' argument that, by alleging that the transactions would "substantially reduce the assets of the pension fund," they had standing. *Id.* The court pointed out that the plaintiffs had not alleged that such a reduction would "adversely affect their interests." *Id.* As the court explained, those plaintiffs' "only cognizable interest in the Plan [was] that their benefits either continue or, for those whose right to benefits has vested but who are not yet receiving a pension, that sufficient funds be present for them to receive benefits in the future." *Id.* Having found that plaintiffs had failed to allege that their "interest in the continued integrity of the Plan [was] threatened," the court affirmed their lack of standing. *Id.*

Like the plaintiffs in *Thole*, *Overstreet*, and *Lee*, plaintiff here participates in a defined benefit plan, and, as a result, lacks standing. Plaintiff concedes, repeatedly, that he—and the putative class he seeks to represent—participate in "the PSERS Defined Benefit Plan." Compl. ¶

---

[4] The terms "pension plan" and "defined benefit plan" are used interchangeably. *See Paulone v. Paulone*, 649 A.2d 691, 692 (Pa. Super. Ct. 1994).

Case ID: 210601197
Control No.: 25128865

Ex. A   0056

3; *see also* ¶¶ 1, 2, 38, 45, 194.  Because he is a "beneficiar[y] of a defined-benefit plan who … is legally entitled to receive [his] benefits for the rest of [his] li[fe], [he] do[es] not have a concrete stake in this case." *Overstreet*, 603 S.W. 3d at 266.  Plaintiff never alleges that the PSERS Plan's continued integrity is threatened or that the litigation's outcome will impact his future benefits in any manner.  He never describes an injury, specific to him, that this action is designed to address.

Rather, throughout his complaint, plaintiff merely asserts that the defined benefit plan, as a whole, has suffered damage. *E.g.* ¶¶ 40, 55, 56, 144, 193, 206.  Courts have rejected this injury theory with respect to a defined benefit retirement plan participant.  In *Thole*, the Court concluded that an alleged injury to a defined benefit plan's overall financial health is insufficient to confer standing on a participant because the "participant['s] benefits are fixed and will not change, regardless of how well or poorly the plan is managed." 140 S. Ct. at 1619-20 (internal citations omitted).  Unlike a defined contribution plan, the Court observed, a defined benefit plan "is more in the nature of a contract" because the benefits paid to each participant are not tied to the value of the plan. *Id.*

And in *Overstreet*, the Kentucky Supreme Court also rejected a theory that alleged losses to the public pension's overall portfolio conferred standing on a plan participant. *Overstreet*, 603 S.W.3d at 253-54.  That court pointed out that, "as [public pension] beneficiaries, Plaintiffs' retirement benefits are part of a statutorily declared 'inviolable contract' between [pension plan] members and the Commonwealth [of Kentucky]." *Id.*  The court concluded that, "[s]hould [the pension plan] become so severely underfunded that it runs out of assets and terminates, the Plaintiffs are still entitled to their pension benefits under their inviolable contract with the Commonwealth." *Id.*  Similarly, as an alleged PSERS Plan participant, plaintiff has a "contract with the Commonwealth[.]" *Burns v. Public School Employees' Retirement Bd.*, 853 A.2d 1146,

Case ID: 210601197
Control No.: 21058865

Ex. A 0057

1154 (Pa. Cmwlth. 2004). Plaintiff's general allegations that his defined benefit plan has suffered damages are insufficient to vest him with standing for this lawsuit, because they do not demonstrate that he has suffered any injury as a result.

This Court also should reject plaintiff's attempt to characterize the increased contributions that he claims the PSERS Plan will mandate beginning in July 2021 as an injury to him. Compl. ¶¶ 166-167. According to plaintiff, Pennsylvania has established a system that ties PSERS Plan participants' contribution levels to the PSERS Plan's investment portfolio's performance levels. *Id.* ¶¶ 17-19, 23. He alleges that PSERS Plan participants become subject to "Shared Risk" contribution rate increases when the PSERS Plan's asset portfolio's long term performance declines below a certain threshold. *Id.* ¶¶ 46, 50 (displaying table of "Shared Risk Increases"); 24 Pa. C.S.A. § 8321(b). According to plaintiff, the PSERS Plan has now notified him that its performance has triggered these Shared Risk provisions, and that his periodic payroll contributions to the PSERS Plan will now increase. Compl. ¶ 48.

But plaintiff will not suffer any actual loss from these Shared Risk increases. The same Pennsylvania statutory provision that requires PSERS Plan participants to make increased "Shared Risk" contributions also mandates that the funds comprising those increases be "credited," with interest, to each participant's retirement account. 24 Pa. C.S.A. § 8321(b) (providing for "shared-risk contribution rates" tied to the performance rate of the PSERS Plan's assets); 24 Pa. C.S.A. § 8502(m) (providing that "shared-risk contributions" be credited to individual participants' accounts). As a result, when plaintiff's contributions are increased, the increase is credited to plaintiff, and he receives statutory interest as well. In other words, plaintiff's net worth is not impacted by these increased contributions, and he therefore has not been injured by them.

Case ID: 210601197
Control No.: 21058865

Ex. A  0058

Having failed to allege any personal loss, either in the form of PSERS Plan underperformance or his increased individual contributions, plaintiff lacks standing to maintain this action. The Court should dismiss this case against Aon with prejudice.

## II. THE COURT SHOULD DISMISS THE COMPLAINT AGAINST AON FOR FAILURE TO STATE A CLAIM (DEMURRER).

A court should sustain a preliminary objection on demurrer grounds "where it appears from the face of the complaint that recovery upon the facts alleged is not permitted as a matter of law." *Kelly v. Kelly*, 887 A.2d 788, 790 (Pa. Super. Ct. 2005); *see also* Pa. R. Civ. P. 1028(a)(4). Here, plaintiff's claims against Aon should be dismissed for the independent reason that he fails to state a claim.

Because Pennsylvania is a fact pleading state, "a pleading must not only apprise the opposing party of the asserted claim, 'it must also formulate the issues by summarizing those facts essential to support the claim.'" *Richardson v. Wetzel*, 74 A.3d 353, 356–57 (Pa. Cmwlth. 2013) (quoting *Sevin v. Kelshaw*, 611 A.2d 1232, 1235 (Pa. Super. Ct. 1992)). Pennsylvania's fact pleading standard is more rigorous than the federal courts' notice pleading standard. *See Real-Loomis v. Bryn Mawr Trust Co*., 2021 WL 1907487 at *3 & n.3 (E.D. Pa. May 12, 2021). Failure to satisfy the fact pleading requirement is grounds for dismissal. *See e.g., Wetzel*, 74 A.3d at 359 (affirming dismissal of complaint where there was an "absence of sufficient factual averments to establish the [alleged misconduct]").

Pennsylvania law also prohibits group pleading. *E.g., Richardson v. Walsh*, 2016 WL 7335824, at *6-7 (Pa. Cmwlth. Dec. 19, 2016) (affirming dismissal of complaint where plaintiff had only "generally designated" individual defendants as alleged tortfeasors); *see also Grande v. Starbucks Corp.*, 2019 WL 1455445, at *3 (E.D. Pa. Apr. 2, 2019) (dismissing complaint where plaintiff's counts were "raised generally against all of the defendants" without alleging "which

Case ID: 210601197
Control No.: 25118865
Ex. A   0059

particular acts were taken by which particular defendants"). In ruling on preliminary objections, a court "need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion." *Dorfman v. Pennsylvania Soc. Servs. Union-Local 668*, 752 A.2d 933, 936 (Pa. Cmwlth. 2000).

## A. In Count I, Plaintiff Fails To Plead A Breach Of Fiduciary Duty Claim Against Aon.

To state a breach of fiduciary duty claim, a plaintiff must allege that (1) a fiduciary relationship exists between the plaintiff and the defendant, (2) the defendant negligently or intentionally failed to act in good faith, (3) the defendant did not act solely for the plaintiff's benefit and (4) the plaintiff suffered an injury caused by the defendant's alleged fiduciary breach. *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 28 (Pa. Super. Ct. 2020). With respect to Aon, plaintiff has failed to satisfy these elements.[5]

***First***, plaintiff fails to allege the first element: a fiduciary relationship between him and Aon. Plaintiff makes a conclusory allegation that the PSERB's statutory fiduciary obligations "extend[ed] to employees and agents of PSERB, including Aon." Compl. ¶ 31 (citing 24 Pa. C.S.A. § 8521(e)).[6] However, plaintiff does not allege that Aon ever functioned as either a PSERB "employee" or "agent" pursuant to 24 Pa. C.S.A. § 8521(e). Instead, he alleges that Aon was an "independent contractor." *Id.* ¶ 32. This allegation is irreconcilable with his suggestion that Aon

---

[5] As previously explained, plaintiff has failed to allege that he has suffered any actual injury. *Supra* p. 9.

[6] 24 Pa. C.S.A. § 8521(e) ("Fiduciary status of board") provides, in relevant part: "The members of the board, employees of the board, and agents thereof shall stand in a fiduciary relationship to the members of the system regarding the investments and disbursements of any of the moneys of the fund and shall not profit either directly or indirectly with respect thereto."

Case ID: 210601197
Control No.: 21083865

Ex. A - 0060

was a PSERB employee.[7]  *See Language Line Servs., Inc. v. Dep't of General Servs.*, 991 A.2d 383, 387-89 (Pa. Cmwlth. 2010) (under Pennsylvania law, the classifications of employee and independent contractor are mutually exclusive).

Plaintiff also does not allege that Aon was an agent of the PSERB.  In Pennsylvania, "the three basic elements of agency are: 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'"  *Smith v. MetLife*, 2009 WL 6057718 (Pa. Com. Pl. Oct. 29, 2009) (quoting *Scott v. Purcell*, 415 A.2d 56, 60 (Pa. 1980)).  In pleading that an agency relationship exists, a plaintiff must "set forth the agent's authority."  *US Coal Corp. v. Dinning*, 222 A.3d 431, 441 (Pa. Super. Ct. 2019), *reargument denied* (Jan. 7, 2020), *appeal denied*, 237 A.3d 388 (Pa. 2020).  Here, plaintiff identifies no communications between Aon and the PSERB that would give rise to an agency relationship.  *See generally* Compl.  Plaintiff alleges that Aon was a "General Investment Consultant" that "assist[ed] the PSERS professional investment staff with a variety of tasks, such as reviewing investment performances and commenting on compliance policies."  *Id.* ¶ 4.  However, he never alleges that the PSERB controlled Aon's conduct, or that Aon had a defined scope of authority to act on PSERB's behalf. *See Condus v. Howard Sav. Bank*, 986 F. Supp. 914, 917 (D.N.J. 1997) (because consulting firm's "role was to provide an independent assessment" and because the client "did not control the method in which [the firm] conducted its assessment," the firm was a "non-agent independent contractor"); *Edwin J. Dobson, Jr. Inc. v. Rutgers*, 157 N.J. Super. 357, 390 (Law Div. 1978) (finding that an outside consultant was not a Rutgers agent, where Rutgers "did not have the right

---

[7] The only PSERB employees that appear in the complaint are those individuals—led by James Grossman and Glen Grell—who allegedly worked at PSERB's in-house Investment Office.  *Id.* ¶ 32.

Case ID: 210601197
Control No.: 21383865

Ex. A - 006

to direct the [] consultant as to how to perform its work"). Because plaintiff has not alleged that either an employee or an agency relationship existed between Aon and the PSERB, plaintiff has failed to allege that Aon served as a fiduciary to him as a PSERS Plan participant.

**Second**, plaintiff has not alleged the second element of a breach of fiduciary duty claim: that Aon acted negligently or intentionally failed to act in good faith, in breach of a fiduciary duty. *Crusader Servicing Corp.*, 231 A.3d at 28. Plaintiff alleges that the defendants breached fiduciary duties by causing the PSERB to invest in private, or alternative, markets. Compl. ¶¶ 64, 164-65, 169. But he never alleges that Aon participated in any of those investment decisions. Rather, plaintiff alleges that Hamilton Lane and 812 Market assisted the PSERB with respect to the selection and execution of those alternative investments. *See, e.g., id.* ¶¶ 111-12, 117, 121, 176, 188. Plaintiff may not impute Hamilton Lane's and 812 Market's alleged misconduct to Aon by vaguely referring to "Defendants' actions" throughout the complaint. *E.g., id.* ¶¶ 165, 167, 178, 199. The Court should disregard such allegations as they amount to impermissible group pleading. *Walsh*, 2016 WL 7335824, at *6-7.

Moreover, under Pennsylvania law, an investment-related fiduciary is afforded discretion to act as a "prudent investor would, by considering the purposes, terms, and other circumstances" of the assets and by pursuing an "overall investment strategy." *Perlberger ex rel. Brennen v. Wachovia Bank, N.A.*, 2004 WL 2988520, *3 (E.D. Pa. Dec. 20, 2004). In the retirement plan context, specifically, investment fiduciaries are permitted to recommend a wide range of investments. *Renfro v. Unisys Corp.*, 2010 WL 1688540, *5 (E.D. Pa. Apr. 26, 2010) (dismissing fiduciary breach claim where defendant retirement plan had "offered participants a number of investment options with varying fees, risks, and potential rewards").

Case ID: 210601197
Control No.: 25082865
Ex. A 0062

Here, plaintiff fails to allege any Aon actions that exceeded that investment discretion's limits.  Although plaintiff includes an unattributed bar graph purporting to show that the PSERS Plan's 2020 asset allocation designated "62.6% to alternatives," Compl. ¶ 91, he contradicts that sweeping claim elsewhere in the complaint.  The PSERS Plan's Comprehensive Annual Financial Report for the fiscal year ended June 30, 2020, which plaintiff relies on, *id.* ¶ 4, n. 1, states that the PSERS Plan's actual allocation to "[a]lternative investments" for 2020 stood at 23.3% of its total portfolio.  Ex. E at 34 (excerpt).  In their proper context alongside sizeable allocations to "short-term," "fixed-income," "common and preferred stock," "collective trust funds," and "real estate," *id.*, these investments cannot raise a serious question as to whether Aon fulfilled any fiduciary duty that it may have had pursuant to its role as a "General Investment Consultant" with alleged input into "establishing an asset allocation plan" for the PSERS Plan.  Compl. ¶ 4.

Plaintiff also fails to sufficiently allege that Aon breached any fiduciary duty related to its calculation of the PSERS Plan's long-term performance return.  Although the complaint suggests that PSERS Plan officers "tasked" Aon with "improv[ing]" the performance return, *id.* ¶¶ 128-29, plaintiff alleges nothing specific about any such scheme or conspiracy.  The Court should disregard this conclusory pleading, which fails to allege the "facts essential to support the claim." *Wetzel*, 74 A.3d at 356–57.  Notably, plaintiff does not even allege that Aon participated in any purported civil conspiracy.  Rather, he acknowledges that Aon made an "initial error" that was "clerical in nature."  Compl. ¶¶ 41-42.

Because plaintiff fails to allege that a fiduciary relationship existed between Aon and plaintiff, or that Aon ever acted in a way that could constitute a fiduciary breach, the Court should dismiss the breach of fiduciary duty claim against Aon.

Case ID: 210601197
Control No.: 21083865

Ex. A - 0063

**B.**    **In Count II, Plaintiff Fails To Plead An Aiding And Abetting A Breach Of Fiduciary Duty Claim Against Aon.**

To plead a claim for aiding and abetting a fiduciary breach, a plaintiff must allege "(1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach." *DePuy Synthes Sales, Inc. v. Globus Medical, Inc.*, 259 F. Supp. 3d 225, 242 (E.D. Pa. 2017) (stating elements required under Pennsylvania law for claim for aiding and abetting a breach of fiduciary duty); *Potok v. Rebh*, 2017 WL 1372754, at *4 (Pa. Super. Ct. Apr. 13, 2017). "The second element requires actual knowledge of the breach." *Id.* Plaintiff has failed to satisfy any of these elements with respect to Aon.

*First*, Plaintiff fails to allege a breach of fiduciary duty owed to another. Plaintiff alleges that "Messrs. Grell and Grossman" committed a predicate breach. *See* ¶¶ 185, 190. However, plaintiff's only other allegations in Count II with respect to those two individuals are that they "sought and received Defendants' assistance in furthering their breaches," *id.* ¶ 185, and that "Defendants," generally, "aided and abetted [them] in their fiduciary breaches[.]" *Id.* ¶ 190. These conclusory allegations fail to satisfy this Court's fact pleading requirements. *Wetzel*, 74 A.3d at 356–57.

*Second*, plaintiff fails to allege that Aon had actual knowledge of any fiduciary breach. By alleging only that "[t]hrough their relationship with Messrs. Grell and Grossman, Defendants had actual knowledge" of supposed fiduciary breaches, plaintiff has—again—engaged in impermissible group pleading. Compl. ¶ 184; *Wetzel*, 2016 WL 7335824, at *6-7. Additionally, plaintiff also fails to plead facts about how Aon—or either of the other defendants, for that matter—acquired any such actual knowledge. *G.B. v. Jade Nails Hair Spa*, 2021 WL 979837 (E.D. Pa. Mar. 16, 2021) (dismissing complaint for failure to "plead facts demonstrating that

Case ID: 210601197
Control No.: 21081865

Ex. A  0064

[defendant] had actual knowledge" of the alleged violation of Pennsylvania state law). Although plaintiff refers vaguely to a "relationship with Messrs. Grell and Grossman," Compl. ¶ 184, he makes no factual allegations about that alleged relationship. He alleges only that Grell and Grossman "tasked Aon to review and revise performance numbers from years dating back to 2010." ¶ 128. This single assertion is insufficient to support the notion that Aon would have had actual knowledge of their alleged fiduciary breaches through its relationship with Grell and Grossman.

**Third**, Plaintiff fails to allege that Aon provided substantial assistance or encouragement to any party's alleged fiduciary breach. Although plaintiff refers to the "recommending [of] improper investment vehicles" to the PSERB, *id.* ¶ 183, he never alleges any Aon involvement in recommending any investment at all. Plaintiff also engages in further impermissible group pleading by alleging that "Defendants," generally, aided and abetted the alleged PSERS trustees' fiduciary breaches by "certify[ing] the health of the defined benefit plan in order to avoid triggering the mandatory contribution requirements." *Id.* ¶ 185; *Wetzel*, 2016 WL 7335824, at \*6-7. Plaintiff's allegation that "Aon revised past performance figures," Compl. ¶ 186, when read with plaintiff's allegation that Aon made an "initial error" in calculating PSERS' long-term return rate, does not suggest assistance or encouragement of others' breaches. *See id.* ¶ 41. The Court should reject plaintiff's unsupported hypothesis that those efforts were part of a larger scheme to hide performance data or avoid triggering increased contribution rates among the PSERS Plan participants. *Dorfman*, 752 A.2d at 936. Plaintiff fails to allege that Aon aided or abetted any alleged fiduciary breaches.

### C. In Count III, Plaintiff Fails To Plead A Negligence Claim Against Aon.

The basic elements of a negligence cause of action are: "(1) a duty, recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to that

Case ID: 210601197
Control No.: 25125865

Ex. A  0065

standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another." *Hicks v. Metro. Edison Co.*, 665 A.2d 529, 532 (Pa. Cmwlth. 1995). As explained below, plaintiff fails to allege any of these elements against Aon.[8]

 **First**, plaintiff fails to allege that Aon owed any legally recognized duty to plaintiff. As explained above, plaintiff has not alleged that Aon owes him any fiduciary duty. *Supra* p. 10-13. Plaintiff also does not sufficiently allege that Aon owed him any direct duty of care. "Duty, in any given situation, is predicated upon the relationship existing between the parties at a particular time[.]" *Burman v. Golay & Co., Inc.*, 616 A.2d 657, 659 (Pa. Super. Ct. 1992); *see also J.E.J. v. Tri-Cty. Big Bros./Big Sisters, Inc.*, 692 A.2d 582, 584 (Pa. Super. Ct. 1997). "When considering the question of duty, it is necessary to determine whether a defendant is under any obligation for the benefit of the particular plaintiff." *Id.* Plaintiff alleges no relationship between Aon and him, let alone one that could give rise to a legally recognized duty. This dearth is understandable, given Aon's alleged role as an "independent contractor" providing advisory services to the PSERB and the PSERS Plan's professional staff; those groups managed the PSERS Plan for Pennsylvania's public school employees' benefit. Compl. ¶ 33. Permitting plaintiff to skip over those groups and attach a duty of care running from Aon to plaintiff would be contrary to the "caution" that courts exercise when examining the existence of duties between financial services firms, their clients, and non-clients. *See, e.g., DeLollis v. Friedberg, Smith & Co., P.C.*, 933 F. Supp. 2d 354, 364-65

---

[8] Plaintiff styles Count III as a claim for "Negligence / Gross Negligence." However, because plaintiff has failed to state a claim against Aon for ordinary negligence, and because gross negligence "involves more than a simple breach of the standard of care (which would establish ordinary negligence)," the Court should also dismiss any claim against Aon for gross negligence. *See Feleccia v. Lackawanna College*, 215 A.3d 3, 20-21 (Pa. 2019) (internal citations omitted).

Case ID: 210601197
Control No.: 25103865

Ex. A  0066

(D. Conn. 2013).   Because Aon had no alleged relationship with plaintiff, it had no legally recognizable duty to plaintiff.[9]

*Second*, plaintiff fails to allege that Aon breached a specified standard of care.  Plaintiff's allegation that "Defendants," generally, "breached their duties by negligently analyzing, assessing, and communicating the financial status of the Plan" amounts to impermissible group pleading. Compl. ¶ 198; *Walsh*, 2016 WL 7335824, at *6-7.  Setting aside plaintiff's group pleading, his remaining allegations fail to satisfy this Court's fact pleading requirements.  With respect to Aon, plaintiff alleges only that it "revised performance metrics for years 2010 to 2019," and that those revisions resulted in an "average fund performance rate of 6.38%."  Compl. ¶¶ 132, 134.  However, plaintiff fails to specify what comprised those alleged "revisions," when they were made, and why they resulted in Aon departing from any specified care standard.  The complaint contains no factual allegations about how Aon acted in a manner that "constitutes ordinary negligence, such as inadvertence, mistake, or errors of judgment."  *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 447 (Pa. Super. Ct. 1987); *see also* Pa. R. Civ. P. 1019(b) (requiring "[a]verments of fraud or mistake" to be stated with particularity).  Although plaintiff alleges several calculations—an "increase[]" of 0.39%, a 0.04% difference, and an "accurate and actual performance percentage of 6.34%," he fails to set forth specific facts about who made those calculations and how they did so in a negligent manner.  Compl. ¶¶ 133-37.  Without these critical allegations, Plaintiff is merely

---

[9] As a PSERS Plan participant, plaintiff likely had legally cognizable relationships with the PSERB and its in-house investment staff.  However, plaintiff has chosen not to name those individuals as defendants in this action, perhaps because of the application of sovereign immunity.  *See Telwell, Inc. v. Pub. Sch. Employees' Ret. System*, 88 A.3d 1079 (Pa. Cmwlth. 2014) (stating that, generally, "PSERS is immune from suit").

Case ID: 210601197
Control No.: 25083865

Ex. A  0067

asking the Court to assume that Aon deviated from an unspecified standard of conduct, and the Court should reject that invitation.

**Third**, Plaintiff has failed to allege a causal connection between Aon's alleged conduct and his alleged injury. *Hicks*, 665 A.2d at 532. Plaintiff alleges, through group pleading, that "Defendants intended that the Plan would rely on the representations that Defendant[sic] made regarding the investments" and that "the Plan was damaged in the hundreds of millions of dollars." Compl. ¶ 206. In other words, plaintiff theorizes that the PSERS Plan has lost funds by virtue of its alleged decisions to shift into "alternative investment[s]." *Id.* ¶¶ 52-60, 88-125. However, Aon is not alleged to have played any role whatsoever in those investment decisions, *supra* p. 4. Consequently, there is no basis to infer that Aon could have caused any damage that allegedly resulted from them. Although plaintiff seeks to tie Aon to those investments by alleging that it was involved in an initial miscalculation of the PSERS Plan's performance rate, *see id.* ¶¶ 126-140, it is ultimately the investments themselves—and not an outside consultant's measurement of the overall performance of the PSERS Plan—that allegedly injured the PSERS Plan, not Aon's conduct.[10]

**Fourth**, plaintiff fails to allege that he has suffered any actual loss or damage. As explained above, *supra* p. 9, any alleged increases in plaintiff's periodic contributions to his own retirement account will be to his benefit—not his loss. Plaintiff also has not alleged that he will be unable to receive his promised benefits upon retirement. Instead, by statute, plaintiff will receive a distribution of his promised benefits, including any increased contributions he makes, with interest. Simply put, plaintiff has alleged no actual loss sufficient to state a negligence claim against Aon.

---

[10] Furthermore, the PSERB allegedly certified the "accurate" rate of performance return on April 19, 2021—months before any contribution increases were to take effect in July 2021. *See* ¶¶ 139-40. Any delay caused by Aon's "initial error" was completely harmless.

Case ID: 210601197
Control No.: 21088865

Ex. A    0068

## <u>CONCLUSION AND RELIEF SOUGHT</u>

For these reasons, the Court should sustain the preliminary objections filed by Aon and

dismiss the complaint for lack of standing.  Alternatively, the Court should sustain the preliminary

objections filed by Aon and dismiss the complaint against Aon for failure to state a claim.

Dated: August 23, 2021                    /s/ *Robert N. Feltoon*

Kevin Dooley Kent (No. 85962)
Robert N. Feltoon (No. 58197)
Andrew K. Garden (No. 314708)
CONRAD O'BRIEN PC
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Ph: (215) 864-9600/ Fax: (215) 864-9620
Email: kkent@conradobrien.com
         rfeltoon@conradobrien.com
         agarden@conradobrien.com


Craig C. Martin (cmartin@willkie.com)
(*pro hac vice forthcoming*)
Amanda S. Amert (aamert@willkie.com)
(*pro hac vice forthcoming*)
Matt D. Basil (mbasil@willkie.com)
(*pro hac vice forthcoming*)
Samuel J. Gamer (sgamer@willkie.com)
(*pro hac vice forthcoming*)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle, Suite 5000
Chicago, Illinois 60654
Tel: (312) 728-9000

*Counsel for Aon Investments USA, Inc.*

Case ID: 210601197
Control No.: 21085865

Ex. A 0069



*Filed and Attested by the
Office of Judicial Records
23 AUG 2021 03:22 pm
S. RICE*

# EXHIBIT A

# 2019 PSERS BOARD MEETING RESOLUTIONS

Expand All

## Select a resolution below to view full resolution.

**2019-01 PSERS RFP 2018-3 Fiduciary Counsel** ⌄

**2019-02 Santé Health Ventures III, L.P. & Santé Health Ventures IV, L.P.** ⌄

**2019-03 Summit Partners Growth Equity Fund X, L.P.** ⌄

**2019-04 812 Market, Inc.** ⌄

**2019-05a PSERS RFP 2018-6 Investment Consulting Services** ⌄

**2019-05b PSERS RFP 2018-6 Investment Consulting Services** ⌄

**2019-06 U.S. and Non-U.S. Proxy Voting Policies** ⌄

**2019-07 Exeter Industrial Core Fund III, L.P.** ⌄

**2019-08 Cabot UK Core-Plus Industrial Fund SCSp** ⌄

**2019-09 Clearlake Opportunities Partners (P) II, L.P.** ⌄

Case ID: 210601197
Control No.: 01283865

Ex. A- 0071

**2019-10 Searchlight Capital III, L.P.** ⌄

**2019-11 Falko Regional Aircraft Opportunities Fund II L.P.** ⌄

**2019-12 Public Information Policy** ⌄

**2019-13 Adoption of Plan Document of the School Employees' Defined Contribution** ⌄

**2019-14 Vanguard Treasury Money Market Fund** ⌄

**2019-15 Calvert Balanced Fund** ⌄

**2019-16 Audit & Compliance Monitoring Plan for FY 19/20** ⌄

**2019 -17 HOP Medical Plan Benefit Changes and Rates** ⌄

**2019-18 Value Medical Plan Premium Rates** ⌄

**2019-19 Pre-65 Medical Plan Premium Rates** ⌄

**2019-20 Enhanced Medicare Rx Option Plan Benefit Changes and Rates** ⌄

**2019 - 21 Basic Medicare Rx Option Plan Benefit Changes and Rates** ⌄

**2019 - 22 Value Medicare Rx Option Plan Benefit Changes and Rates** ⌄

**2019-23 Bain Capital Distressed and Special Situations 2019 (A), L.P.** ⌄

Case ID: 210601197
Control No.: 21085865

Ex. A - 0072

**2019-24 Incline Elevate Fund, L.P.**    ⌄

**2019-25 Hahn & Company III, L.P. and Hahn & Company III-S, L.P.**    ⌄

**2019-26 Amendment to the PSERB Statement of Organization, Bylaws, and Other Procedures**    ⌄

**2019-27 Amendment to the PSERB Election Procedures and Guidelines Policy, Fraud, Waste and Abuse Reporting and Investigation Policy, and Oral Argument Policy**    ⌄

**2019-37 Bell Institutional Fund VII, L.P.**    ⌄

**2019-28 Adoption of Investment Policy Statement, Objectives, and Guidelines of the School Employees Defined Contribution Plan of the Public School Employees' Retirement Board**    ⌄

**2019-29 Internal Control Assessments and Monitoring Plan**    ⌄

**2019-30 Enhanced Medicare Rx Option Plan and Rates Effective January 1, 2020**    ⌄

**2019-31 Basic Medicare Rx Option Plan Rates Effective January 1, 2020**    ⌄

**2019-32 Value Medicare Rx Option Plan Rates Effective January 1, 2020**    ⌄

**2019-33 Policy Changes**    ⌄

**2019-34 Designated Signatory Resolution Change**    ⌄

Case ID: 210601197
Control No.: 21083865

Ex. A- 0073

**2019-35 Investment Objectives and Guidelines**    ⌄

**2019-36 Platinum Equity Capital Partners V, L.P.**    ⌃

**PSERB Resolution 2019-36**

**Re:  Platinum Equity Capital Partners V, L.P.**

**August 9, 2019**

RESOLVED, that the Public School Employees' Retirement Board (the "Board") hereby invests an amount not to exceed $300 million plus reasonable normal investment expenses, in Platinum Equity Capital Partners V, L.P. (and/or related investment vehicles), in accordance with the

recommendation of Luke M. Jacobs, Portfolio Manager, dated April 29, 2019 and Hamilton Lane, dated April 1, 2019 (/About/Board/Resolutions/Documents/2019/Res-36.pdf)

.  The final terms and conditions of the investment must be satisfactory to the Investment Office, the Office of Chief Counsel, and the Office of Executive Director, as evidenced either by the appropriate signatures on, or by a memo to that effect appended to, the implementing investment contract.

**2019-38 Cabot Industrial Value Fund VI, L.P.**    ⌄

**2019-39 DRA Growth and Income Master Fund X, LLC**    ⌄

**2019-40 AG Europe Realty Fund III, L.P.**    ⌄

**2019-41 SSG Capital Partners V, L.P.**    ⌄

**2019-42 Investment Objectives and Guidelines Strategic Asset Allocation**    ⌄

**2019-43 Investment Objectives and Guidelines Benchmark**    ⌄

Case ID: 210601197
Control No.: 21284865

Ex. A - 0074

**2019-44 Amendment to the Statement of Organization Bylaws, and Other Procedures, October 11, 2019** ⌄

**2019-45 Re: Ft. Lauderdale Galleria Mall, October 11, 2019** ⌄

**2019-46 Re: 812 Market, Inc., October 11, 2019** ⌄

**2019-47 Re: Investment Objectives and Guidelines, October 11, 2019** ⌄

**2019-48 Re: Exeter Industrial Value Fund V, L.P., October 11, 2019** ⌄

**2019-49 Administrative, Defined Contribution, Investment Office Consolidation, Investment Related Expenses, Health Insurance Account (Premium Assistance) Administrative, Health Options Program (cont.), October 11, 2019** ⌄

**2019-50 Re: Financial Statements and Ratification of Payments, October 11, 2019** ⌄

**2019-51 Re: Independent Auditors' Report, October 11, 2019** ⌄

**2019-52 Re: RFP Results for Investment Compliance Services, October 11, 2019** ⌄

**2019-53 Re: SERS/PSERS Investment Office Consolidation, October 11, 2019** ⌄

**2019-54 Re: HOP PDP Code of Conduct Policy, December 06, 2019** ⌄

**2019-55 Re: Health Options Program Budget, December 06, 2019** ⌄

Case ID: 210601197
Control No.: 21115865

Ex. A- 0075

**2019-56 Re: Investment Objectives and Guidelines, December 06, 2019**  ⌄

**2019-57 Re: SASOF V LP, December 06, 2019**  ⌄

**2019-58 Re: Portfolio Advisors Secondary Fund IV, L.P., December 06, 2019**  ⌄

**2019-59 Re: Incline Equity Partners V, L.P., December 06, 2019**  ⌄

**2019-60 Re: Apax X USD, L.P., December 06, 2019**  ⌄

**2019-61 Re: Insight Partners XI, L.P., December 06, 2019**  ⌄

**2019-62 Re: Clearlake Capital Partners VI, L.P., December 06, 2019**  ⌄

**2019-63 Re: Actuarial Valuation and Fiscal Year 2020-21 Employer Contribution Rate, December 06, 2019**  ⌄

**2019-64 Re: Investment Transparency Policy, December 06, 2019**  ⌄

**2019-65 Re: Procurement of Cyber Insurance, December 06, 2019**  ⌄

Case ID: 210601197
Control No.: 25046865

Ex. A - 0076



# EXHIBIT B

Case ID: 210601197
Control No.: 21083865

Ex. A - 0077

# 2020 PSERS BOARD MEETING RESOLUTIONS

Expand All

## Select a resolution below to view full resolution.

**2020-01 Resolution Honoring Melva S. Vogler**                          ⌄

**2020-02 Re: U.S. and Non-U.S. Proxy Voting Policies, March 6, 2020**    ⌄

**2020-03 Re: Investment Governing Policies, March 6, 2020**             ⌄

**2020-04 Re: Hg Genesis 9 A L.P., March 6, 2020**                       ⌄

**2020-05 Re: Hg Saturn 2 A L.P., March 6, 2020**                        ⌄

**2020-06 Re: New Mountain Partners VI, L.P., March 6, 2020**            ⌄

**2020-07 Re: Investment Governing Policies, March 6, 2020**            ⌄

**2020-08 Re: Audit & Compliance Monitoring Plan for FY 20/21, June 12, 2020** ⌄

**2020 – 09 Re: HOP Medical Plan Benefit Changes and Rates Effective January 1, 2021, June 12, 2020** ⌄

Case ID: 210601197
Control No. 21088865

Ex. A  0078

**2020 – 10 Re: Pre-65 Medical Plan Premium Rates Effective January 1, 2021, June 12, 2020** ⌄

**2020 – 11 Re: Value Medical Plan Premium Rates Effective January 1, 2021, June 12, 2020** ⌄

**2020 – 12 Re: Basic Medicare Rx Option Plan Benefit Changes and Rates Effective January 1, 2021, June 12, 2020** ⌄

**2020 – 13 Re: Value Medicare Rx Option Plan Benefit Changes and Rates Effective January 1, 2021, June 12, 2020** ⌄

**2020 – 14 Re: Enhanced Medicare Rx Option Plan Benefit Changes and Rates Effective January 1, 2021, June 12, 2020** ⌄

**2020 -15 Re: Retiree Dental Benefits, June 12, 2020** ⌄

**2020 – 16 Re: Health Options Program Third Party Administration Services, June 12, 2020** ⌄

**2020 – 17 Re: Retiree Vision Benefits, June 12, 2020** ⌄

**2020-18 Re: Internally Managed Premium Assistance Portfolio, June 12, 2020** ⌄

**2020-19 Re: Placement Agent Policy, June 12, 2020** ⌄

**2020-20 Re: Bridgepoint Development Capital IV, L.P., June 12, 2020** ⌄

**2020-21 Re: Whitehorse Liquidity Partners IV LP, June 12, 2020** ⌄

Case ID: 210601197
Control No.: 21068865

Ex. A-0079

**2020-22 Re: PSERS RFP 2020-1 Hedge Fund and Private Credit Investment Consulting Services, June 11, 2020** ⌄

**2020-23 RE: Templeton Global Bond R6, June 12, 2020** ⌄

**2020-24 Resolution Honoring Charles K. Serine, Esq.** ⌄

**2020-25 Re: Sixth Street Fundamental Strategies Partners (A), L.P., April 30, 2020** ⌄

**2020-26 Re: Travel Policy, August 7, 2020** ⌄

**2020-27 Re: Internal Control Assessments and Monitoring Plan, August 7, 2020** ⌄

**2020-28 Re: Clearlake Flagship Plus Partners L.P., August 7, 2020** ⌄

**2020-29 Re: LLR Equity Partners VI, L.P., August 7, 2020** ⌄

**2020-30 Re: PGIM Real Estate Capital VII, SCSp, August 7, 2020** ⌄

**2020-31 Re: ISQ Global Infrastructure Fund III, L.P., August 7, 2020** ⌄

**2020-32 Re: New Mountain Partners VI, L.P., August 7, 2020** ⌄

**2020-33 Re: Investment Objectives and Guidelines, August 19, 2020** ⌄

**2020-34 Re: Project Newton, September 14, 2020** ⌄

**2020-35 Re: Amendment to the Health Options Program Eligibility and Enrollment Policy, October 9, 2020** ⌄

**2020-36 RE: 2021-22 Administrative, Investment Related Expenses, Defined Contribution, Health Insurance Account (Premium Assistance) Administrative, HOP Administrative and Directed Commissions Recapture Program Budgets October 9, 2020** ⌄

**2020-37 Re: Financial Statements and Ratification of Payments, October 9, 2020** ⌄

**2020-38 Re: Independent Auditors' Report, October 9, 2020** ⌄

**2020-39 Re: Greenoaks Capital Opportunities Fund III LP, October 9, 2020** ⌄

**2020-40 Re: Polaris Fund V, L.P., October 9, 2020** ⌄

**2020-41 Re: Insight Partners Opportunities Fund I, L.P., October 9, 2020** ⌄

**2020-42 (Tabled Until Future Meeting) Re: Investment Objectives and Guidelines, October 9, 2020** ⌄

**2020-43 Re: PSERS RFP 2020-7 Board Governance Consulting Services, October 9, 2020** ⌄

**2020-44 Re: PSERS RFP 2020-5 Proxy Research and Voting Services, October 9, 2020** ⌄

**2020-45 Re: Investment Objectives and Guidelines, November 12, 2020** ⌄

Case ID: 210601197
Control No.: 23083865

Ex. A - 008

**2020-46 Re: Investment Objectives and Guidelines, November 12, 2020**                    ⌄

**2020-47 Re: Health Options Program (HOP) Budget, December 3, 2020**                    ⌄

**2020-48 Re: Bylaws Change, December 3, 2020**                    ⌄

**2020-49 Re: Investment Objectives and Guidelines, December 3, 2020**                    ⌄

**2020-50 Re: Sixth Street Specialty Lending Europe II, L.P., December 3, 2020**                    ⌄

**2020-51 Re: Valar Velocity Fund 2 LP, December 3, 2020**                    ⌄

**2020-52 Re: Actuarial Valuation, December 3, 2020**                    ⌃

**PSERB Resolution 2020-52 Re:  Actuarial Valuation December 3, 2020**

**RESOLVED,** that the Public School Employees' Retirement Board (the "Board") hereby accepts the

June 30, 2020 actuarial valuation report prepared by Buck

(/About/Board/Resolutions/Documents/2020/PSERS%202020%20Valuation%20
Board%20Presentation%20Dec%203.pdf)

, and adopts the actuarial factors, assumptions, and methodologies contained therein, which result in an employer contribution rate of 34.94% for Fiscal Year July 1, 2021 through June 30, 2022.

**RESOLVED FURTHER**, that the Board certifies and retains the current T-E member contribution rate of 7.5%, T-F member contribution rate of 10.3%, TG member contribution rate of 8.25% (Defined benefit rate 5.50%; DC rate 2.75%) and TH member contribution rate of 7.5% (Defined benefit rate 4.50%; DC rate 3.00% for the three-year period from July 1, 2021 to June 30, 2024 in accordance with the Shared Risk provisions of PSERS' retirement code

Case ID: 210601197
Control No.: 21133865

Ex. A - 0082



Filed and Attested by the
Office of Judicial Records
23 AUG 2021 03:22 pm
S. RICE

# EXHIBIT C

Case ID: 210601197
Control No.: 21083865

Ex. A - 0083



# Pennsylvania Public School Employees' Retirement System

June 30, 2020 Valuation
Board Presentation
December 3, 2020




Case ID: 210601197
Control No. 210828865

Ex. A- 0084

# Disclosures

The information contained herein is developed for the Board of Trustees and Staff of the Pennsylvania Public School Employees' Retirement System  (PSERS) by Buck Global, LLC (Buck) using actuarial principles and techniques in accordance with all applicable Actuarial Standards of Practice (ASOPs). This document provides key results of the June 30, 2020 actuarial valuation. Interested parties may refer to the full June 30, 2020 Actuary's Report, which is scheduled to be released in 2021, for a detailed explanation regarding data, assumptions, methods, and plan provisions that underlie the valuation results. In the interim, interested parties may refer to the full Actuary's Report on the June 30, 2019 actuarial valuation for a detailed explanation regarding assumptions, methods, plan provisions, and certain risks that underlie the valuation.

The material contained herein is based on census and financial data, actuarial assumptions and methods, and plan provisions applicable to the June 30, 2020 actuarial valuation of PSERS. Where presented, historical information is based on the parameters of the corresponding actuarial valuation. No third party recipient of Buck's work product should rely upon Buck's work product absent involvement of Buck or without our approval.

Future actuarial measurements may differ significantly from current measurements due to plan experience differing from that anticipated by the economic and demographic assumptions, increases or decreases expected as part of the natural operation of the methodology used for these measurements, and changes in plan provisions or applicable law. An analysis of the potential range of future results is beyond the scope of this valuation.

Where presented, references to "funded ratio" and "unfunded accrued liability" are to measurements made on the basis of the actuarial value of assets. It should be noted that the same measurements made using the market value of assets would result in different funded ratios and unfunded accrued liabilities. Moreover, the funded ratios presented are appropriate for evaluating the need for and level of future contributions but provide no indication of the funded status of the plan if the plan were to settle (i.e., purchase annuities to cover) a portion or all of its liabilities.

Actuarial Standard of Practice No. 56 ("ASOP 56") provides guidance to actuaries when performing actuarial services with respect to designing, developing, selecting, modifying, using, reviewing, or evaluating models. Buck uses third-party software in the performance of annual actuarial valuations and projections. The model is intended to calculate the liabilities associated with the provisions of the System using data and assumptions as of the valuation date under the funding standards specified in Actuary's Report. Further, the



2

Case ID: 210601197
Control No.: 21085865

Ex. A - 0085

# Disclosures

model applies those funding standards to the liabilities derived and other inputs, such as System assets and contributions, to generate many of the exhibits found in this report. Buck has an extensive review process whereby the results of the liability calculations are checked using detailed sample output, changes from year to year are summarized by source, and significant deviations from expectations are investigated. Other funding outputs are similarly reviewed in detail and at a high level for accuracy, reasonability and consistency with prior results. Buck also reviews the model when significant changes are made to the software. The review is performed by experts within the company who are familiar with applicable accounting rules as well as the manner in which the model generates its output.

David L. Driscoll is a Fellow of the Society of Actuaries and a Member of the American Academy of Actuaries.  Edward Quinn and Salvador Nakar are Members of the American Academy of Actuaries. We meet the Qualification Standards of the American Academy of Actuaries to render the actuarial opinions contained herein. We are available to answer any questions on the material contained herein, or to provide explanations or further details as may be appropriate.



3

Case ID: 210601197
Control No.: 21066865

Ex. A - 0086

# Agenda

- Overview of 2019 - 2020 fiscal year
- Review of Shared Risk determination
- Report on June 30, 2020 valuation results
- Experience Study – 2021
- ASOP 51



4

Case ID: 210601197
Control No. 23085865

Ex. A - 0087

# Overview of 2019/2020 Fiscal Year

- The time-weighted rate of return on the market value of assets was 1.11% *(per Aon)*
    - Expected return for the period July 1, 2019 to June 30, 2020 was 7.25%
    - Due to the asset smoothing method approach for determining the Actuarial Value of Assets (AVA), the AVA rate of return for the year was approximately 6.38%, which reflects continued recognition of past investment gains and losses

- The proportion of eligible participants who are assumed to elect Premium Assistance coverage for determination of the Premium Assistance contribution rate decreased from 63% to 62% in fiscal year 2022/2023 and thereafter.

- The assumed proportions of membership elections under Act 5 among new System members in fiscal year 2021/2022 are:
    - 98% elect Class T-G membership,
    - 1% elect Class T-H membership and
    - 1% elect DC-only membership

    Note: These assumptions are based on the class of new members in the System as of June 30, 2020

 **BUCK**

5

Case ID: 210601197
Control No.: 088865

Ex. A - 0088

# Shared Risk Determination - July 1, 2021 to June 30, 2024

Act 5-2017 Class T-E, Class T-F, Class T-G and Class T-H Shared Risk Contributions

➢ Commencing with the annual actuarial valuation for the period ending June 30, 2014, and every three years thereafter, the Board compares the actual investment rate of return, net of fees, to the annual interest rate adopted by the Board for the calculation of the normal contribution rate, based on the market value of assets, for the prior ten-year period.

Until the Retirement System has accumulated a ten-year period of investment rate of return experience following June 30, 2011, the look-back period used in this calculation will begin not earlier than June 30, 2011.

➢ If the actual time-weighted investment rate of return, net of fees, is less than the annual interest rate adopted by the Board by an amount of 1% or more, the shared risk contribution rate of Class T-E and T-F members will increase by 0.5% and the shared risk contribution rate for Class T-G and Class T-H members will increase by .75%.

➢ If the actual time-weighted investment rate of return, net of fees, is more than the annual interest rate adopted by the Board by an amount of 1% or more, the shared risk contribution rate of Class T-E and T-F members will decrease by 0.5% and the shared risk contribution rate for Class T-G and Class T-H members will decrease by .75%.



Case ID: 210601197
Control No.: 21088865

Ex. A - 0089

# Summary of the Act 5-2017 Shared Risk Provisions

Certain restrictions apply:

➢ If the Retirement System's total funded ratio based on the actuarial value of assets is at least 100% as of the measurement date, the shared risk contribution rate shall not be greater than zero.

➢ For any fiscal year in which the employer contribution rate is lower than the final contribution rate under section 8328(h), the total member contribution rate for Class T-E, T-F, T-G and T-H members shall be reset to the basic contribution rate provided the total member contribution rate is at or above the basic contribution rate.

➢ There shall be no increase in the member contribution rate if there has not been an equivalent increase to the employer contribution rate over the previous three-year period.

None of the above overrides to the Shared Risk Contribution rate are currently in effect.

A summary of the Act 5-2017 Shared Risk provisions is supplied in the Appendix.

 **BUCK**

Case ID: 210601197
Control No.: 21063865

Ex. A - 0090

# Shared Risk Determination - July 1, 2021 to June 30, 2024

Act 5 Class T-E/T-F/T-G/T-H Shared Risk

➢ Market Rates of Return, net of fees, for the nine years since the effective date of Act 120
  • Fiscal year 2011/2012: 3.44%
  • Fiscal year 2012/2013: 7.95%
  • Fiscal year 2013/2014: 14.82%
  • Fiscal year 2014/2015: 3.41%
  • Fiscal year 2015/2016: 1.33%
  • Fiscal year 2016/2017: 10.20%
  • Fiscal year 2017/2018: 9.26%
  • Fiscal year 2018/2019: 6.66%
  • Fiscal year 2019/2020: 1.11%

The geometric average time-weighted rate of return, net of fees, for the nine-year period ending June 30, 2020 is 6.38% per annum, as calculated by Aon



**BUCK**

8

Case ID: 210601197
Control No.: 21083865

Ex. A - 0091

# Shared Risk Determination - July 1, 2021 to June 30, 2024

➢ Annual interest rates adopted by the Board for the nine annual actuarial valuations since the effective date of Act 120

- June 30, 2012: 7.50%
- June 30, 2013: 7.50%
- June 30, 2014: 7.50%
- June 30, 2015: 7.50%
- June 30, 2016: 7.25%
- June 30, 2017: 7.25%
- June 30, 2018: 7.25%
- June 30, 2019: 7.25%
- June 30, 2020: 7.25%

The geometric average of the annual interest rates adopted by the Board over the 9-year period less 1.00% is 6.36%.

- If the annual interest rate adopted by the Board for the calculation of the normal contribution rate is changed during the period used to determine the Shared Risk contribution rate, the Board, with the advice of the actuary, shall determine the applicable rate during the entire period, expressed as an annual rate.



9

Case ID: 210601197
Control No. 21098865

Ex. A - 0092

# Shared Risk Determination - July 1, 2021 to June 30, 2024

➢ The geometric average time-weighted market rate of return, net of fees, of 6.38% is greater than 6.36% (average of the annual interest rates adopted by the Board over the same 9-year period less 1.00%).  Therefore, the Shared Risk contribution rate is zero.

➢ The contribution rates for the defined benefit plan for Class T-E, Class T-F, Class T-G and Class T-H members remain at 7.50%, 10.30%, 5.50% and 4.50%, respectively, for the period 7/1/2021 to 6/30/2024.

➢ The next Class T-E, Class T-F, Class T-G and Class T-H Shared Risk valuation is to be performed for the ten-year period ending June 30, 2023.

 **BUCK**

10

Case ID: 210601197
Control No.: 23865

Ex. A 0093



*Filed and Attested by the
Office of Judicial Records
23 AUG 2021 03:22 pm
S. RICE*

# EXHIBIT D

Case ID: 210601197
Control No.: 21082865

Ex. A - 0094

# 2021 PSERS BOARD MEETING RESOLUTIONS

<u>Expand All</u>

Select a resolution below to view full resolution.

**2021-01 Re: Oak HC/FT Partners IV, L.P. 1/14/2021**    ⌄

**2021-02 Re: Investment Objectives and Guidelines 1/14/2021**    ⌄

**2021- 03 Re: Five-Year Actuarial Experience Review – Demographic Assumptions 3/5/2021**    ⌄

**2021-04 Re: Investment Governing Policies 3/5/2021**    ⌄

**2021-05 Re: Carlyle Realty Partners IX, L.P. 3/5/2021**    ⌄

**2021-06 Re: Apax Digital II L.P. 3/5/2021**    ⌄

**2021-07 Re: U.S. and Non-U.S. Proxy Voting Policies 3/5/2021**    ⌄

**2021-08 Re: Withdrawal Liability 3/5/2021**    ⌄

**2021-09 Re: Delegation of Internal Investigation to Audit Committee 3/12/2021**    ⌄

**2021-10 Re: Engagement of Outside Special Counsel 03/19/2021**

Case ID: 210601197
Control No. 0095865

Ex. A  0095

**2021-11 Re: Engagement of Outside Counsel 03/19/2021** ⌄

**2021-12 Re: Legal Services Contract, Pillsbury Winthrop Shaw Pittman LLP 04/06/2021** ⌄

**2021-13: Re: Legal Services Contract, Sidley Austin LLP 04/09/2021** ⌄

**2021-14 Re: Engagement of Investment Oversight Consulting Firm 04/19/2021** ⌄

**2021-15 Re: Legal Services Contract 04/19/2021** ⌄

**2021-16 Re: Recertification of Member Contribution Rates, effective July 1, 2021** ⌃

**PSERB Resolution 2021-16 Re: Recertification of Member Contribution Rates, effective July 1, 2021.04/19/2021**

RESOLVED, that the Public School Employees' Retirement Board (the "Board") amends PSERB Resolution 2020-52 by replacing the second paragraph of said Resolution in its entirety with the following.

RESOLVED FURTHER, that the Board certifies the T-E member contribution rate of 8.0%, T-F member contribution rate of 10.8%, T-G member contribution rate of 9.0% (Defined benefit rate 6.25%; DC rate 2.75%) and T-H member contribution rate of 8.25% (Defined benefit rate 5.25%; DC rate 3.00%) for the three-year period from July 1, 2021 to June 30, 2024 in accordance with the Shared Risk provisions of PSERS' Retirement Code.

**2021-17 (Audit/Compliance Committee) Re: Engagement of Investment Oversight Consulting Firm 04/20/2021** ⌄

**2021-18 Re: Five-Year Actuarial Experience Review – July 1, 2015 to June 30, 2020 – Mortality Assumptions 6/11/2021**

Case ID: 210601197
Control No.: 25083865

Ex. A - 0096

**2021-19 Re: Pre-65 Medical Plan Premium Rates Effective January 1, 2022 6/11/2021**

**2021-20 Re: Value Medical Plan Premium Rates Effective January 1, 2022 6/11/2021**

**2021-21 Re: HOP Medical Plan Benefit Changes and Rates Effective January 1, 2022 6/11/2021**

**2021-22 Re: Value Medicare Rx Option Plan Benefit Changes and Rates Effective January 1, 2022 6/11/2021**

**2021-23 Re: Basic Medicare Rx Option Plan Benefit Changes and Rates Effective January 1, 2022 6/11/2021**

**2021-24 Re: Enhanced Medicare Rx Option Plan Benefit Changes and Rates Effective January 1, 2022 6/11/2021**

**2021-25 Re: Audit Plan for FY 21/22 6/10/2021**

**2021-26 Re: Act 2020-128 Internal Control Assessment 6/10/2021**

**2021-27 (A/C) Re: Engagement of Outside Counsel 6/10/2021**

**2021-28 Re: Investment Compliance Review Report for the period January 1, 2021 to April 16, 2021 6/11/2021**

**2021-29 Re: Capstone Commonwealth Fund L.P. 6/10/2021**

**2021-30 Re: Investment Governing Policy 6/11/2021**

Case ID: 210601197
Control No.: 0098865

Ex. A - 0097

**2021-31 Re: Board and Staff Travel Policy 7/13/2021** ⌄

**2021-32 Re: Five-Year Actuarial Experience Review – July 1, 2015 to June 30, 2020 - Administrative Option Factors 08/06/2021** ⌄

**2021-33 Re: Five-Year Actuarial Experience Review – July 1, 2015 to June 30, 2020 – Economic Assumptions 08/06/21** ⌄

**2021-34 Re: Act 128 of 2020 SOC1 Type2 Study and Notice of Forthcoming Procurement 08/06/21** ⌄

**2021-35 Re: Internal Control Assessment and Monitoring Plan 08/06/2021** ⌄

**2021-36 Re: Compliance Review Report for the External Manager Selection and Due Diligence dated July 12, 2021 08/06/2021** ⌄

**2021-37 Re: Amendments to Policy Manual for Investment Professional Staff 08/06/2021** ⌄

**2021-38 Re: Signing of Contracts, Instruments, and Other Documents 08/06/2021** ⌄

**2021-39 Re: Insight Partners Fund XII, L.P. 08/11/21** ⌄

**2021-40 Re: Summit Partners Growth Equity Fund XI-A, L.P. 08/11/21** ⌄

Ex. A - 0098



Filed and Attested by the
Office of Judicial Records
23 AUG 2021 03:22 pm
S. RICE

# EXHIBIT E



Allegheny National Forest
Marienville, PA

# Comprehensive Annual Financial Report

Fiscal Years Ended June 30, 2020 & 2019



**PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM**

A Component Unit of the Commonwealth of Pennsylvania

Case ID: 210601197
Control No.: 21060665

Ex. A-0100

**Management's Discussion and Analysis (continued)**

returns and establishes an asset allocation plan taking into account the risk associated with each asset class as well as the financial objectives of the Fund.

The past fiscal year will be remembered as a tale of two halves. The first half was highlighted by a strong period for equity returns due to the easing of monetary policies in the United States and Europe as well as a "phase one" trade deal between the U.S. and China which alleviated trade tensions between the two countries. The second half was dominated by a global pandemic with many economies in the world completely shutting down and plunging the global economy into a recession. However, the challenge of falling incomes was met by unprecedented monetary and fiscal policies in the United States and elsewhere to prevent depression-like conditions. The U.S. economy languished in contraction territory during a large part of the fiscal year as measured by the Institute of Supply Management (ISM) Purchasing Managers' Index (PMI), an indicator of activity in the sector. During the fiscal year, the ISM PMI fell from 51.6 at June 30, 2019 to a low of 41.5 on April 30, 2020 during the depths of the COVID-19 crisis before recovering to 52.6 on June 30, 2020. The COVID-19 pandemic affected economies globally with economic activity being negatively impacted in Europe and Asia.

The U.S. economy suffered a significant economic contraction during the fiscal year due to the pandemic. However, these negative economic conditions were alleviated by swift and aggressive fiscal and monetary policy. The Federal Reserve dropped the Federal Funds target rate range by 2.25% during the fiscal year from 2.25% - 2.50% in June 2019 to 0.00% - 0.25% in June 2020. In addition, the Federal Reserve implemented numerous liquidity programs to ensure the proper function of the bond markets. The Federal Government approved over $3 trillion of fiscal spending in the form of tax rebates, a Payroll Protection Program, unemployment insurance benefits, and other forms of fiscal relief. The official unemployment rate rose significantly during the fiscal year from 3.7% at June 30, 2019 to 11.1% at June 30, 2020.

The Euro Area economy was struggling prior to the pandemic and has only worsened since that time. The Euro Area's response to the COVID-19 pandemic was more modest than the U.S. response. The European Central Bank (ECB) and the European Union adopted various monetary and fiscal stimulus programs which amounted to over $1.7 trillion. As of the second quarter 2020, the Euro Area was contracting at a 14.5% annual pace, meaningfully down from the modest 1.3% growth rate one year earlier. The unemployment rate remained relatively stable at 7.7% as of June 2020 compared to 7.5% a year earlier due to companies receiving financial incentives to maintain employee payroll during the pandemic. The Euro Area economy remained in

contraction territory as evidenced by the Markit Eurozone Manufacturing PMI measurement of 47.4 in June 2020 down slightly from 47.6 last June, and falling as low as 33.4 during the depth of the pandemic. The ECB continued its policy of very accommodative overnight interest rates (negative 0.5% at June 30, 2020, down from negative 0.4% at June 30, 2019).

Japan's economy was not spared difficulties from the COVID-19 pandemic, although from a health perspective Japan had little in the way of COVID-19 cases relative to the U.S. and Europe. As of the second quarter 2020, Japan's real GDP fell by a year-over-year rate of 9.9% versus a 0.9% year-over-year growth rate for the second quarter 2019. Japanese policy makers continued to aggressively attempt to stimulate their economy through a combination of low interest rates, the purchase of higher risk assets by the Bank of Japan, coordinated diversification into higher risk assets by large public investors, and fiscal spending policies to encourage liquidity to move into riskier assets.

China had robust growth compared to the other developed regions of the world and their aggressive actions fighting the COVID-19 virus allowed them to recover more quickly economically. China's real GDP increased by 3.2% over the past year, significantly slower than the 6.2% pace for the year ended June 2019 due to the weak March 2020 quarter when the economy was shut down due to the pandemic.

For FY 2020, PSERS' time-weighted rate of return on investments was 1.11% which was below PSERS' total fund Policy Index of 2.74% for the same time period. A time-weighted rate of return considers investment performance of a hypothetical dollar invested from the beginning of an investment period to the period's end. The Policy Index is a custom benchmark, based on the Board-established asset allocation structure, that seeks to generate a return that meets the actuarial rate of return assumption. Net investment income of $1.0 billion in FY 2020 declined from a net investment income of $3.6 billion in FY 2019, as the FY 2020 return of 1.11% was substantially below the FY 2019 return of 6.68%. Both FY 2020 and FY 2019 investment returns trailed PSERS 7.25% long term actuarial return assumption.

The time-weighted annualized rate of return over the past three- and five-year periods ended June 30, 2020 was 5.62% and 5.64%, respectively. The time-weighted return for the three-year period and five-year period trailed the total fund Policy Index return by 64 basis points and 44 basis points respectively. The annualized time-weighted rate of return for the ten- and twenty five-year periods ended June 30, 2020 was 7.70% and 7.48%, respectively.

Case ID: 210601097
Control No.: 21083865

Ex. A 010

## Financial Section

### Management's Discussion and Analysis (continued)



Figure 2 - Asset Distribution
June 30, 2020

The asset distribution of PSERS' investment portfolio at June 30, 2020, 2019, and 2018, at fair value, including defined contribution and postemployment healthcare assets, is presented in Figure 2 and Table 1.

**FY 2020**

- *Short-term investments* (cash and cash equivalents) increased from $6.0 billion at June 30, 2019 to $6.2 billion June 30, 2020 mainly due to a reclassification of assets.
- *Fixed income investments* increased by $1 billion from $8.7 billion at June 30, 2019 to $9.7 billion at June 30, 2020. Due to a reallocation of exposure from other asset classes, PSERS significantly increased fixed income investments during FY 2020.
- *Common and preferred stock investments* remained consistent at $9.8 billion at June 30, 2019 and June 30, 2020.
- *Collective trust funds* decreased by $1.1 billion from $14.3 billion at June 30, 2019 to $13.2 billion at June 30, 2020. Due to a reallocation of exposure from other asset classes, PSERS significantly decreased collective trust fund investments during FY 2020.
- *Real estate investments* remained consistent at $5.5 billion at June 30, 2019 and June 30, 2020.

- *Alternative investments* remained consistent at $13.4 billion at June 30, 2019 and June 30, 2020.

**FY 2019**

- *Short-term investments* (cash and cash equivalents) decreased from $6.2 billion at June 30, 2018 to $6.0 billion at June 30, 2019 mainly due to a reclassification of assets.
- *Fixed income investments* increased by $3.5 billion from $5.2 billion at June 30, 2018 to $8.7 billion at June 30, 2019. Due to a reallocation of exposure from other asset classes, PSERS significantly increased its fixed income investments during FY 2019.
- *Common and preferred stock investments* decreased by $3.0 billion from $12.8 billion at June 30, 2018 to $9.8 billion at June 30, 2019. Due to a reallocation of exposure from other asset classes, PSERS decreased its common and preferred stock investments during FY 2019.
- *Collective trust funds* increased by $0.3 billion from $14.0 billion at June 30, 2018 to $14.3 billion at June 30, 2019 mostly due to positive investment performance.
- *Real estate investments* increased by $0.5 billion from $5.0 billion at June 30, 2018 to $5.5 billion at June 30, 2019 due to significant contributions to new and existing partnerships combined with valuation increases in partnership portfolio holdings which exceeded significant partnership distributions.
- *Alternative investments* increased by $0.8 billion from $12.6 billion at June 30, 2018 to $13.4 billion at June 30, 2019 due to contributions to new and existing partnerships combined with valuation increases in partnership portfolio holdings which exceeded significant distributions.

### Securities Lending

The System's net income from securities lending activities increased from $14.3 million in FY 2019 to $15.3 million in FY 2020. Lending income and expense both decreased

| Asset Class | 2020 | % | 2019 | % | 2018 | % |
|---|---|---|---|---|---|---|
| Table 1 - Investment Balances by Asset Class | | | | | | |
| | | | (Dollar Amount in Thousands) | | | |
| Short-term | $ 6,239,539 | 10.8 | $ 6,027,740 | 10.4 | $ 6,173,655 | 11.0 |
| Fixed income | 9,675,197 | 16.7 | 8,652,870 | 15.0 | 5,235,603 | 9.4 |
| Common and preferred stock | 9,756,769 | 16.9 | 9,813,146 | 17.0 | 12,832,667 | 23.0 |
| Collective trust funds | 13,175,523 | 22.8 | 14,305,045 | 24.8 | 14,011,193 | 25.1 |
| Real estate | 5,478,122 | 9.5 | 5,484,621 | 9.5 | 5,039,237 | 9.0 |
| Alternative investments | 13,448,551 | 23.3 | 13,445,135 | 23.3 | 12,609,975 | 22.5 |
| **Total** | **$ 57,773,701** | **100.0** | **$ 57,728,557** | **100.0** | **$ 55,902,330** | **100.0** |

Case ID: 210601197
Control No. 210502865
Ex. A   0102

## Management's Discussion and Analysis (continued)

significantly as the economy in general moved from a moderate to a lower interest rate environment. The spread increased from FY 2019 to FY 2020 as gross earnings on the borrowers' collateral outpaced the amounts rebated to the borrowers.

### Contributions

Employer contributions increased from $4.6 billion in FY 2019 to $4.8 billion in FY 2020 due to the increase in the total employer contribution rate from 33.43% in FY 2019 to 34.29% in FY 2020 and growth in employer payroll. Total employer contributions increased from $4.4 billion in FY 2018 to $4.6 billion in FY 2019. This increase was primarily attributable to an increase in the total employer contribution rate from 32.57% in FY 2018 to 33.43% in FY 2019.

Total member contributions slightly increased from $1.06 billion in FY 2019 to $1.08 billion in FY 2020 and increased from $1.03 billion in FY 2018 to $1.06 billion in FY 2019. The increase in both years was mainly due to an increase in member contributions from active member payroll.

As a result of an increase in member purchase of service contributions and active member payroll, member contribution receivables increased from $352.4 million at June 30, 2019 to $356.4 million at June 30, 2020. As a result of an increase in member purchase of service contributions, member contribution receivables increased from $350.4 million at June 30, 2018 to $352.4 million at June 30, 2019. The increase in the employer contribution rate from FY 2019 to FY 2020, and growth in the employer payroll resulted in the employer contribution receivables rising from $1.3 billion at June 30, 2019 to $1.4 billion at



June 30, 2020. See Figure 4 for a thirty five-year history of PSERS' contribution rates.

### Commonwealth Share of Employer Contributions

The Commonwealth reimburses all school entity employers (school districts, intermediate units and vocational technical schools) a portion of all employer contributions paid to the System. The Commonwealth reimburses at least 50% of school entities' contributions. The Commonwealth reimbursement rate, however, could be larger based on its Market Value / Personal Income Aid Ratio, which is a Commonwealth of Pennsylvania Department of Education calculation of local tax rates and socioeconomic factors. This reimbursement that school entities receive from the Commonwealth is referred to as the Commonwealth Share of employer contributions. The Commonwealth Share of contributions is paid to the school entities approximately 75 days after the end of each quarter. School entities have



Case ID: 210601197
Control No.: 865

Ex. A - 0103

**IN THE COURT OF COMMON PLEAS OF**
**PHILADELPHIA COUNTY, PENNSYLVANIA**

*Filed and Attested by the*
*Office of Judicial Records*
*23 AUG 2021 03:22 pm*
*S. RICE*

| | | |
|---|---|---|
| KEVIN STEINKE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL DIVISION |
| | ) | |
| v. | ) | COMMERCE PROGRAM |
| | ) | |
| AON INVESTMENTS USA, INC., | ) | Case ID: 210601197 |
| HAMILTON LANE ADVISORS, L.L.C., | ) | |
| and 812 MARKET STREET, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## ORDER

AND NOW this ___ day of _____, 2021, upon consideration of the

Preliminary Objections filed by defendant, Aon Investments USA, Inc., to plaintiff's Complaint,

and the brief in support of the Preliminary Objections, it is hereby ORDERED that said Preliminary

Objections are SUSTAINED and plaintiff's Complaint is dismissed as to Aon Investments USA,

Inc.


BY THE COURT


_____J.