**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEVIN STEINKE, et al., | : | CIVIL ACTION |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| AON INVESTMENTS USA INC., | : | No. 25-cv-7163 |
| and AKSIA LLC, | : | |
| *Defendants*. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                  **February 11, 2026**

This is a class action lawsuit seeking tens of millions of dollars in damages, which was removed to federal court under the Class Action Fairness Act, *see* 28 U.S.C. § 1332(d). Plaintiffs now move to remand the case, arguing that Defendants' notice of removal was untimely. ECF No. 33. For the reasons set forth below, the Motion to Remand (ECF No. 33) will be **DENIED**.

## I.    BACKGROUND

Plaintiffs are public school teachers who participate in the pension fund Public School Employees Retirement System ("PSERS"), which administers pension plans for Pennsylvania public school employees. ECF No. 1-18 ¶¶ 1, 3–4, 7–8, 11–12, 15–16. To participate in PSERS, Plaintiffs are required to contribute to the fund. *See id.* ¶¶ 5, 9, 13, 17. Plaintiffs allege that after July 1, 2021, the amounts they were required to contribute to PSERS increased. *Id.* ¶¶ 6, 10, 14, 18.

In connection with their increased pension fund contributions, Plaintiffs initiated a putative class action in the Philadelphia County Court of Common Pleas against Defendants Aon Investments USA, Inc.; Hewitt EnnisKnupp, Inc.; and Aon Hewitt Investment Consulting, Inc. (hereinafter the "Aon Defendants"); and Defendants Portfolio Advisors LLC; Hamilton Lane Advisors, LLC; and Aksia, LLC. *Id.* at 1–3. According to Plaintiffs, during the relevant period,

Defendants served as investment consultants for PSERS, *id.* ¶¶ 28, 30, 33, 36, and recommended unreasonable and risky investments to PSERS, thereby causing Plaintiffs' contributions to PSERS to increase, *see, e.g., id.* ¶¶ 127, 165, 206, 244, 285, 332. Based on these allegations, Plaintiffs brought claims for breach of fiduciary duty and breach of third-party beneficiary contract and sought to hold Defendants jointly and severally liable for their conduct. *Id.* ¶¶ 382, 385–502. Plaintiffs brought the action "on behalf of themselves and all other similarly situated persons whose pension contributions or pension benefits have been or will be affected by Defendants' actions and inactions, including their investment recommendations, decisions, and other wrongful conduct." *Id.* ¶ 370.

Subsequently, Plaintiffs moved for class certification. *See* ECF No. 1-26 at 1012. On September 11, 2024, the Philadelphia County Court of Common Pleas granted the motion and certified a class. *See id.* The court concluded that 118,000 or more contributing members to PSERS fell within the class, each of whom suffered "increased Plan contributions" due to Defendants' alleged "failure to properly advise PSERS." *Id.* at 1019, 1023. The court further concluded that the damages each class member could potentially recover "appear[ed] to be slightly more than $1,000," *id.* at 1027, totaling $118 million in possible damages. *Cf.* ECF No. 1-8 at 8 (plaintiffs asserting in discovery that the potential recovery in this case was over $87.3 million).

On August 22, 2025, Plaintiffs moved the Court of Common Pleas for an order granting approval of settlements with Defendants Hamilton Lane and Portfolio Advisors. ECF No. 39-3 at 13–14; *see* Pa. R. Civ. P. 1714(a) (stating that "[n]o class action shall be compromised, settled or discontinued without the approval of the court after hearing"); *see In re Bridgeport Fire Litig.*, 8 A.3d 1270, 1285 (Pa. Super. Ct. 2010) ("Prior to approving a class settlement, a lower court must conclude that it is fair and reasonable and adequately protects the members of the class." (citation

omitted)). Though a settlement terms sheet was attached to the order, the removing Defendants represent that they never were presented with the actual settlement agreement between Plaintiff and Hamilton Lane, ECF No. 44 at 6 n.3, and do not even know whether the agreement "was reduced to a formal settlement agreement," ECF No. 39 at 9 n.2. The Court of Common Pleas granted the motion and approved the settlement on October 8, 2025. *See* ECF No. 39-4 at 2 (order of final approval). The Parties agree that the removing Defendants received notice of this order at the latest on October 9, 2025. *See* ECF No. 33 at 1; ECF No. 39 at 19.

In the days before and weeks after the state court's approval of the settlement, the Parties discussed the possibility of filing a stipulation of dismissal as to Hamilton Lane and Portfolio Advisors. *See* ECF No. 39-1 at 9–13. Under the Pennsylvania Rules of Civil Procedure, "the written consent of all parties or leave of court" is required to dismiss fewer than all defendants from an action. Pa. R. Civ. P. 229(b)(1). Counsel for Aksia stated that it was discussing the stipulation with local counsel, and counsel for the Aon Defendants stated it was discussing the stipulation with the client. ECF No. 39-1 at 10–11. On October 21, 2025, counsel for the Aon Defendants then suggested that the Parties schedule a call to discuss Hamilton Lane's request for the other Parties to consent to dismissal. *Id.* at 9.

Following the Parties' call, on November 11, 2025, counsel for Hamilton Lane circulated to the Parties a working draft of a stipulation to dismiss Hamilton Lane from the litigation. *See id.* at 18. In that correspondence, counsel stated that the draft stipulation "has not been approved by our client" and was being circulated "for discussion purposes." *Id.* at 30. That same day, Plaintiffs responded to the Parties with "[v]ery minor suggestions" to that stipulation. *Id.* at 29.

On November 20, 2025, counsel for Hamilton Lane circulated "the stipulation to which we agreed," which was signed on behalf of Hamilton Lane. *Id.* at 24. Also on November 20, the other

Parties signed the stipulation of dismissal. *See id.* at 22–23. The Parties then filed the stipulation with the Court of Common Pleas that same day. *See id.* at 50.

On December 18, 2025, Defendants Aksia LLC and Aon Investments USA Inc. removed this case to federal court under the Class Action Fairness Act ("CAFA"), *see* 28 U.S.C. § 1332(d). ECF No. 1 at 1. Plaintiffs then moved to remand.[1] ECF No. 33.

## II.    DISCUSSION

Plaintiffs moves to remand this case on the grounds that Defendants' notice of removal was untimely. Under 28 U.S.C. § 1446, a defendant must generally file a notice of removal "within 30 days after the receipt . . . of the initial pleading." 28 U.S.C. § 1446(b)(1). However, "if the case stated by the initial pleading is not removable," a defendant's thirty-day clock to remove the case does not begin until the defendant receives "through service or otherwise . . . an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

Here, it is undisputed that the "initial pleading [was] not removable," and the sole issue is when the removing Defendants received "an amended pleading, motion, order or other paper" from which it could "first be ascertained that the case . . . bec[a]me removable." *Id.* A number of circuits have held that a "pleading, motion, order or other paper," *id.*, must make it "unequivocally clear and certain" that the case is removable for the thirty-day removal clock to start, *see Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998) (requiring "clear and unequivocal notice"); *Walker v. Trailer Transit, Inc.*,

---

[1] After Plaintiffs moved to remand, Plaintiffs and some of the remaining Defendants—Defendants Aon Investments USA, Inc.; Hewitt EnnisKnupp, Inc.; and Aon Hewitt Investment Consulting, Inc.—filed a joint notice of settlement. ECF No. 43. The notice states that these Parties have reached a settlement in principle, that the agreement "is not yet finalized," and that the Parties "reserve all rights with respect to the ongoing settlement negotiation process." *Id.* at 1 & n.1. No settlement, in principle or otherwise, has been reached with respect to Defendant Aksia LLC.

727 F.3d 819, 824 (7th Cir. 2013) (requiring paper to "affirmatively and unambiguously reveal[] that the predicates for removal are present"). The clear and unequivocal standard exists with good reason: It "bring[s] certainty and predictability to the [removal] process," *Dietrich*, 14 F.4th at 1091 (citation omitted), and it promotes judicial economy by "reduc[ing] protective removals by defendants" when the basis for removal is uncertain, *Seaux v. Wal-Mart Stores, Inc.*, No. 06-cv-0909, 2006 WL 2460843, at *2 (W.D. La. Aug. 22, 2006).

Defendants did not receive clear and unequivocal notice that the case had become removable until all Parties signed the stipulation to dismiss Defendant Hamilton Lane on November 20, 2025. Under Pennsylvania law, a stipulation to dismiss was the only way to drop Hamilton Lane from the case, unless Plaintiffs or Hamilton Lane moved for leave of court, which did not occur here. *See* Pa. R. Civ. P. 229(b)(1) ("[A discontinuance may not be entered as to less than all defendants except upon the written consent of all parties or leave of court upon motion of any plaintiff or any defendant for whom plaintiff has stipulated in writing to the discontinuance."). And it was Hamilton Lane no longer being a party to the case that established grounds for removal under CAFA. While Hamilton Lane was a defendant, its status as a party in the case triggered the local controversy exception to CAFA jurisdiction, which Plaintiffs do not dispute.[2] *See* 28 U.S.C. § 1332(d)(4)(A)(i); ECF No. 39 at 15; *see generally* ECF Nos. 33, 42 (not challenging that the local controversy exception was applicable). Dropping Hamilton Lane as a party was therefore the only unequivocal and clear guarantee that the case had become removable. *Cf.* 14 Wright &

---

[2] The local controversy exception strips a district court of subject matter jurisdiction under CAFA when (1) "greater than two-thirds of the members of all proposed plaintiff classes" are citizens of the forum state, (2) at least one defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims" is a citizen of the forum state, and (3) "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in" the forum state. 28 U.S.C. § 1332(d)(4)(A)(i). Here, Hamilton Lane was the only defendant who satisfied the second element of the local controversy exception.

Miller's Federal Practice & Procedure § 3723 (4th ed. updated Sept. 2025) ("A party whose presence in the action would destroy diversity must be dropped formally, as a matter of record, to permit removal . . . ."); *Tyler v. Am. Optical Corp.*, No. 16-cv-02337, 2016 WL 1383459, at *4 (C.D. Cal. Apr. 7, 2016) ("[S]ettlement with a non-diverse party does not establish diversity jurisdiction unless and until that party is dismissed from the action." (alteration in original) (citation omitted)); *Price tr. of Vivian Price Fam. Tr. v. AMCO Ins. Co.*, No. 17-cv-01053, 2017 WL 4511062, at *2 (E.D. Cal. Oct. 10, 2017) (concluding that cases within the Ninth Circuit support that a non-diverse defendant's formal dismissal from the case starts the removal clock); *Motley v. Option One Mortg. Corp.*, 620 F. Supp. 2d 1297, 1300 (M.D. Ala. 2009); *Smith v. Int'l Harvester*, 621 F. Supp. 1005, 1009 (D. Nev. 1985).

The state court's approval of Plaintiffs' settlement with Hamilton Lane did not start the removal clock. While it signaled that Hamilton Lane may soon cease to be a party to the suit, it did not in fact drop Hamilton Lane from the litigation. Instead, the settlement terms were apparently silent regarding Hamilton Lane's dismissal from the suit, *see* ECF No. 1-9 at 8–10 (settlement agreement term sheet), and Plaintiffs did not move in state court for leave to dismiss Hamilton Lane as a defendant, *see* Pa. R. Civ. P. 229(b)(1) (to dismiss fewer than all defendants, requiring either "leave of court" or "written consent of all parties"). And had the remaining Defendants attempted to remove the action at that stage, they risked the action possibly being remanded to state court on the grounds that removal was premature. *See, e.g.*, *Universal Ins. Co. v. Hartford Fire Ins. Co.*, 556 F. Supp. 2d 68, 71 (D.P.R. 2008) (finding removal premature where non-diverse party settled but was not yet dismissed from the case, including where applicable law—like here—required a stipulation of dismissal or order of the court to dismiss defendant).

Plaintiffs argue that even if the approval of a settlement with Hamilton Lane did not start

the clock for removal, Plaintiffs' email to all Parties on November 11, 2025 did. *See* ECF No. 33 at 11. That email attached "very minor suggestions" to a stipulation of dismissal Hamilton Lane had circulated. ECF No. 39-1 at 29. But Hamilton Lane's counsel had expressly warned that the stipulation "ha[d] not been approved by [the] client" and was being circulated "for discussion purposes." *Id.* at 30. And rather than fully assent to the stipulation, Plaintiff attached, admittedly minor, suggestions. *See id.* at 29. That draft stipulation, which had not even been approved by Hamilton Lane, did not unequivocally remove Hamilton Lane from the litigation or clearly establish that the requirements for CAFA jurisdiction had been met.

Starting the removal clock from when Hamilton Lane was formally dropped from the litigation accords with how courts have treated removal in other contexts. For instance, in the context of non-diverse defendants who have not been properly served, courts have held that the removal clock does not begin "until that defendant has been formally dropped from the case." *Worthy v. Schering Corp.*, 607 F. Supp. 653, 655 (E.D.N.Y. 1985); *see also Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 387 (5th Cir. 2018) (An action may "become removable when the only nondiverse defendant is formally dropped from the suit."). And, in another context, where the non-diverse plaintiffs were foreign corporations not authorized to do business in the forum state, the court concluded that the removing defendants justifiably waited until the plaintiffs were dismissed to file a notice of removal. *See Nasso v. Seagal*, 263 F. Supp. 2d 596, 606 & n.16 (E.D.N.Y. 2003). Affording the removing Defendants until Hamilton Lane was dropped from the case, rather than when the settlement was approved, is consistent with these other contexts.

Affording Defendants until Hamilton Lane was dismissed to remove the case is also consistent with the purpose of CAFA jurisdiction. In passing CAFA, Congress expressed a "strong preference that interstate class actions should be heard in [] federal court." S. Rep. No. 109-14, at

7

43 (2005). Consistent with this purpose, courts have interpreted CAFA to alter traditional principles of removal that favor remanding cases. To begin, though courts have ordinarily applied a presumption in favor of remand in diversity cases, with "all doubts [to] be resolved in favor of remand," *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted), that presumption is not applied in cases removed under CAFA, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1068 (9th Cir. 2021) ("Other than for cases under the Class Action Fairness Act of 2005 (CAFA), we strictly construe the removal statute against removal jurisdiction."). To the contrary, courts have held that CAFA should be interpreted "broadly in favor of removal."[3] *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015); *see Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 287 (6th Cir. 2016); *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 342 n.14 (4th Cir. 2019) (while discussing CAFA exceptions, stating that "because CAFA was intended to confer broad federal court jurisdiction . . . any close question has to be resolved in favor of removal to the federal court"). Permitting defendants to postpone removal until a party who destroys CAFA jurisdiction is dismissed from the case comports with CAFA's strong preference for allowing a greater number of interstate class actions to proceed in federal court.

To be sure, some courts have concluded that a defendant may remove the case before the state court formally dismisses the party responsible for destroying jurisdiction. *See, e.g.*, *Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901, 903 n.2 (8th Cir. 1985); *Est. of Martineau v. ARCO Chem.*

---

[3] Plaintiffs argue that no presumption in favor of removal exists under CAFA. *See* ECF No. 42 at 6. However, the cases to which they cite concern which party bears the burden of establishing that removal is proper. *See id.* at 6–7. While CAFA does not alter the burden of proof on removal, courts deciding cases removed under CAFA do not apply the same presumptions in interpreting removal provisions when deciding if a party has met its burden.

*Co.*, 203 F.3d 904, 912 (5th Cir. 2000); *Bumgardner v. Combustion Eng'g, Inc.*, 432 F. Supp. 1289, 1291 (D.S.C. 1977); *Boggs v. Harris*, 226 F. Supp. 3d 475, 495 (W.D. Pa. 2016) (unsigned stipulation of discontinuance sufficient to start removal clock). But many of these cases involve an entirely different procedural posture: There, the defendants removed the case prior to a jurisdiction-destroying party's formal dismissal and the plaintiff argued that removal was premature. *See Chohlis*, 760 F.2d at 903 n.2;[4] *Est. of Martineau*, 203 F.3d at 912 (concluding that a settlement agreement with a non-diverse defendant sufficed to permit another defendant to remove the case); *Bumgardner*, 432 F. Supp. at 1291 (while applying Missouri law, finding that a settlement agreement functioned as a voluntary discontinuance that permitted the defendants to remove the case). These cases therefore addressed whether the defendants were permitted to remove cases prior to another party's formal dismissal; they did not squarely consider whether the defendants were required to do so. Nor were these cases removed under CAFA jurisdiction. *See, e.g.*, *Boggs*, 226 F. Supp. 3d at 480 (involving removal based on diversity jurisdiction and, in any case, addressing whether an unsigned stipulation of discontinuance started the removal clock); *Chohlis*, 760 F.2d at 903 (removal based on diversity jurisdiction); *Est. of Martineau*, 203 F.3d at 909 (same); *Bumgardner*, 432 F. Supp. at 1290 (same). They therefore were not decided in light of Congress's strong preference for interstate class actions to be litigated in federal court. *See Dart Cherokee*, 574 U.S. at 89; S. Rep. No. 109-14, at 43 (2005).

Lastly, determining that Defendants' removal clock starts at the unequivocal point when a party is dismissed makes practical sense. While a party may ultimately return to (or in some cases,

---

[4] What is more, in *Chohlis*, the Eighth Circuit devoted a single footnote to the issue of removal because the primary issues before the court were the district court's trial-related rulings and jury instructions. *See Chohlis*, 760 F.2d at 903 & n.2. *Chohlis* therefore addressed the issue of removal only in passing.

remain in) federal court if it removes a case prematurely, *Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156, 160 (4th Cir. 2010) (a case that was removed before the requirements for federal jurisdiction were fully met may remain in federal court if the jurisdictional defect is cured), removing the case too late dooms the possibility for litigating in federal court. Such an unforgiving standard for late removals tips in favor of affording defendants a broader runway, and a brightline point, for removing a case in which the jurisdiction-destroying party has settled the case. That is particularly true here, where CAFA was intended to promote litigation of class actions in federal court, *see Dart Cherokee*, 574 U.S. at 89; S. Rep. No. 109-14, at 43 (2005), and where Pennsylvania law requires a stipulation or leave of court to discontinue fewer than all defendants from the litigation, Pa. R. Civ. P. 229(b)(1).

\* \* \* \*

Plaintiffs brought a class action lawsuit involving tens of millions of dollars in potential damages and over 100,000 class members in the Philadelphia County Court of Common Pleas. While Defendant Hamilton Lane was a party to the case, that defendant triggered the local controversy exception to CAFA, and the case proceeded in state court. The removing Defendants did not receive clear and unequivocal notice that the case had become removable until the Parties signed the stipulation to dismiss Defendant Hamilton Lane from the case on November 20, 2025. Therefore, the removing Defendants' thirty-day clock to remove the case began on November 20, 2025, and their removal of the case on December 18, 2025 was timely.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand (ECF No. 33) will be **DENIED**. An appropriate Order will follow.

10

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**